## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF NEW YORK

ROMAN BRIK,

*Plaintiff,*

- against -

JANET MCFARLAND, individually, and
COURT OFFICER LAVANCO (badge #6248),
individually

*Defendants.*

CIVIL ACTION NO. _____

**JURY TRIAL DEMANDED**

23-cv-3507-AMD-LB

## COMPLAINT - DEPRIVATION OF CONSTITUTIONAL RIGHTS
## AND PETITION FOR WRIT OF MANDAMUS
### PRELIMINARY STATEMENT

1. This action is brought against Janet McFarland, a judge of Richmond County Family Court in Staten Island ("McFarland"), and her court officer, Lavanco (shield #6248), who, apparently at the direction of McFarland, violently assaulted me, the undersigned Plaintiff, at the entrance of McFarland's courtroom in which McFarland engaged an illegal ex-parte hearing, excluding me but keeping state-paid opposing party's attorney, Ian Berliner, the opposing party, and the state-paid children's attorney, Rita Kaufman, who since then was relieved from the case. The described events tool place at the conclusion of a regular court session on 2/24/2023, and are eerily reminiscent of 18-cv-02909 *Jacobs v. Cosimo Ali* (EDNY).

2. In violation of Sixth and Seventh Amendments of the U.S. Constitution, McFarland denied me the right to a jury trial, and is steamrolling me into a trial scheduled to start on 5/9/2023.

3. My exposure of the rot festering in the Staten Island court managed and supervised by Ann-Marie Jolly and Alison Hamanjian, who clearly are running cover for McFarland, earned respect and recognition even from NYC Mayor's office and legal counsel. **I am a certified member of the press**, and the court's actions are nothing less than a blatant attack by a rogue government arm on free journalism and free speech.

4. This action also documents the insidious methods by which the New York State government and its courts systemically and deliberately break child-parent bonds, aid and abet parental alienation – a form of child abuse, evade accountability, and stonewall any meaningful oversight. McFarland is a childless political activist-turned-judge, who was obscurely appointed to Richmond County Family Court and continued making prohibited payments to her party comrades. She knowingly and maliciously plays a critical, central role in this institutionalized orphanization generating billions of USD and millions of broken, state-dependent, obedient subjects for the state.

5. In part, via mechanisms of federal incentives and matching child support funds (Social Security Act, Title IV-D), the government created a plausibly deniable system eschewing 50/50 parenting and incentivizing fabricated designation of one parent as protected/custodial, and another as targeted/visitor. Furthering this goal, McFarland nepotistically assigns and covers for a small clique of attorneys acting in tandem "for the child" and the enabled alienator. For example. McFarland's treasurer and successor as the head of SIWBA, Rosa Tragni, is assigned to dozens of cases in front of McFarland and her colleagues, funneling lucrative state-paid 18B and AFC contracts and thousands upon thousands of dollars from the public fisc.

6. Similarly, McFarland's recent court attorney, Soukaina Sourouri, who just resigned on 9/10/22 (based on UCS FOIL information), immediately started receiving lucrative government assignments in front of her former boss.

7. All this, along with court's other habitual violations of all judicial norms of behavior, blatant unprofessionalism, intimidation of a Jewish litigant through Nazi-symbols brandishing court officers, McFarland's lying on her 2022 annual report as to her job title, and much more.

8. Many more desperate victims of McFarland came forward, despite the risk of retaliation, on the highly popular "Fire Janet McFarland from Staten Island Family Court" Facebook group page,

which has hundreds of members. Beyond myself, many, many other parents came out, who - and whose children - were brutally violated by McFarland, are who were not afraid to expose themselves publicly and state their names, including: Marcello Roque, John Kepmpf, Charlie Schultz, Marta Bryceland, Katie Marie Montello, Antonette Paternostro, Nadine M. Sturge - and many others who are gathering their documents and will likewise continue exposing McFarland's patently obvious unfitness to stay on the bench another minute.

9. McFarland encourages and amplifies fraudulent allegations as a pretense for isolating children through "supervised visitations", without any fair hearing or due process; refuses to hear evidence or arguments, silencing targeted parents – and then drags her feet, routinely violating statutory decision-making deadlines. McFarland does so until isolated child-hostages reject the targeted parent as a psychological survival mechanism of identification with abuser, allowing her to formally solidify and perpetuate the alienator/targeted designation through equally lawless façade of a trial, often including an orchestrated, intimidating in-chambers interview with the terrorized children, eventually manufacturing the system's goal of ensuring constant money flow into state coffers, years of government dependence of emotionally broken children and parents, and the adjacent welfare and punitive apparatuses.

10. According to her own annual statements, McFarland has shamelessly served in senior positions in the Democratic party and openly feminist clubs / organizations – clearly seeing no problem in making life-long decisions for others' children after promoting the interests of a party whose leaders advocate dismembering of live children in a womb, sex reassignment surgeries and puberty blockers for children, and grooming of small children via "Drug Queen Story Hours" and "sexual education" in public school system. Given this ideological alignment with godless,

immoral, anti-children agenda, McFarland's appointment to the bench and active role in the abuse and forced alienation of countless children under the color of court authority is no surprise.

11. McFarland knows that appeals on her "interlocutory" decisions will be rejected by LaSalle's intermediate appellate court (Appellate Division, Second Department) - Hector LaSalle, who laughably alluded to racial discrimination despite earning hundreds of thousands of USD and luxurious state jobs, and who has not bothered to even answer constitution-centered questions on his recent job application, as exposed by Hon. Sen. Hoylman in NYS Senate Judiciary Committee. LaSalle and his court, in turn, know that appeals on their refusals to review illegal orders of McFarland and her clones, will not be taken by the Court of Appeals - whose two recent chief judges were forced out (most recently, Janet DiFiore) - a high court which has a corruption problem with reporting as much as car expenses, as exposed by the reporter Frank Runyeon as to Anthony Cannataro. Former Acting Chief Administrative Judge was also implicated in untruthful statements to the NYS Senate – showing that the top of NYS judiciary is deeply corrupt and compromised, and will never hold judges like McFarland accountable.

12. Although the government's goal is obviously to ensure the outcomes by controlling the process through monetary incentives, the system was clearly designed with the larger ideological goal in mind, similarly deniable by the state and benched leftist / communist activists like McFarland: controlling, dividing, and atomizing the population, promoting inter-sex animosity, pitting children against parents through indoctrination, depleting individual resources and leaving them no choice but to send children to public schools awash with government indoctrination. All, with the end goal of discouraging Americans from forming strong, government-resistant families and from having children, whom they can lose at any moment in a subverted, largely predetermined process which is nothing but an empty husk of "justice" – preserving the hollow

title of "court", along with the cynical, deliberate mockery of "In God we Trust" hanging on the courtroom walls, between which judicial atrocities are committed and children's souls are broken.

13. **As a Soviet-born, G-d fearing Jew, a descendant of an ancient nation whose children were torn out of hands of loving parents and tortured by countless scheming tyrants, big and petty alike, throughout history – tyrants who similarly tried to claim "black" as "white" and vice-versa, and to pretend to act in the name of the same children they were tormenting – before tormentors' inevitable self-destruction and demise, I recognize government deceit and oppression when I see it, even when it is cloaked by a black robe.**

14. I recognize the abject tyranny perpetuated in McFarland's courtroom, even if it is deceptively done under the hollowed-out title of "family court". It is my duty, as a father, and as an American, to expose the despotism, the utter lawlessness, and the ungodly ideology behind it.

15. As a believing Jew, I am unequivocally commanded by my faith not to bow to tyranny of any man (or woman), regardless of personal price or risk. G-d forbids us from acquiescing to slavery:

> *"And all the king's servants, that were in the king's gate, bowed, and reverenced Haman: for the king had so commanded concerning him. But Mordecai bowed not, nor did him reverence." Esther 3:2*

> *"Blessed are You, G-d, L-rd, King of the Universe, who has not made me a slave." Liturgy, Morning Blessings.*

## FORMAL BACKGROUND

16. The Plaintiff, ROMAN BRIK, ("Plaintiff"), representing himself, complaining of the Defendants, respectfully alleges as follows and brings this action pursuant to 42 U.S.C. §1983, 42 U.S.C. §1985, and 42 U.S.C. §1988 for violations of his civil rights, which are secured by said statutes and the Constitution of the United States, as well as the Constitution and laws of the State of New York.

17. To further elaborate: this action is brought to redress the deprivation of rights secured to the Plaintiff under color of statute, ordinance, regulation, custom, and/or to redress the deprivation of rights, privileges, and immunities secured to the Plaintiff by the First Amendment, including Freedom to Petition Clause, Fifth, Sixth, Seventh, Ninth and Fourteenth Amendments (and Privileges and Immunities Clause of Fourteenth Amendment, Section 1, Clause 2), Privileges and Immunities Clause of Article IV, Section 2, Clause 1, and the Supremacy Clause of Article VI of the Constitution of the United States, and by Title 42 U.S.C. §1983.

## JURISDICTION

18. This action is brought pursuant to 42 U.S.C. §1983, 42 U.S.C. §1985 and 42 U.S.C. §1988, and the Fourteenth Amendment to the United States Constitution.

19. Jurisdiction is founded upon 28 U.S.C.§§ 1331, 1343 and 1367.

## VENUE

20. Venue properly lies in the Eastern District of New York under 28 U.S.C. §1391(b), in that this is the district in which a substantial part of the events or omissions giving rise to this claim occurred.

## JURY DEMAND

21. Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

22. Empaneling a jury of impartial Americans is absolutely pivotal in this case. This, in order to ensure that in our system of government of the people, by the people, for the people, the people will see with their own eyes the horrifying extent of government oppression of loving, caring parents in McFarland's courtroom, and exercise their freedom to govern themselves through adjudicating and imposing direct accountability on government officials.

23. Plaintiff respectfully demands that any question contesting Plaintiff's right to bring this action and / or to try the action in front of a panel of fellow Americans not on government-payroll, **will itself be decided by a jury. This, to prevent blocking of access to jury by a salaried judge, who shares institutional interests of protecting his or her own class of fellow judges, and of shielding themselves from any responsibility by answering the public directly.**

## THE PARTIES

24. Plaintiff, Roman Brik, resides in 805 Willowbrook Rd, Staten Island, NY 10314.

25. At all times hereinafter mentioned, Plaintiff was and is a father litigating a custody/visitation case (*Roman Brik v. Ilana Stroutsovsky,* docket no. V-01268-20/20A, V-01269-20/20A) in Richmond County Family Court in Staten Island, NY ("custody case").

26. Defendant Judge JANET MCFARLAND is employed as a judge in Richmond County Family Court, 100 Richmond Terrace, Staten Island, NY 10301.

27. According to public records and given the demand for local residence, Defendant McFarland resides in Staten Island, NY.

# FACTS

## DEFENDANT MCFARLAND AND HER PROHIBITED POLITICAL PAYMENTS

### *Who is McFarland*

28. According to McFarland's annual financial statements for the six years of 2015 through 2020, obtained pursuant to 22 NYCRR §7400, McFarland has been a single woman.

29. According to McFarland's annual financial statements for years 2015-2020, McFarland does not have children.

30. According to McFarland public bio, McFarland graduated from Brooklyn Law School, currently ranked at the very bottom of the first 100 law schools in the US, at #98.[1]

31. According to McFarland's annual statements, for at least three years into the reported period she has served as a Member of Democratic County Committee of Richmond County, and during at least two years – as a Member of Thomas Jefferson Democratic Club of Kings County.

32. In addition to several other politically connected roles, McFarland held positions of Vice President, and later President of Staten Island Woman's Bar Association at least for 4 years into the reported period, as well as President Elect, and later President of Soroptimists International (another type of her own sex promoting organization, proudly showing McFarland on the first page of the website, **without a single man among over 40 individuals** in the large group picture – from 2016 and into at least the last year available for public inspection, 2020.[2,3]

33. According to the annual reports, McFarland moved from a position of a Principal Attorney to a Court Attorney Referee (a judicial position subject to the same prohibitions as judges) in 2017.

34. On April 14, 2021 it was announced that former New York Mayor DeBlasio appointed McFarland as an interim Civil Court judge, and that she has been assigned to Family Court.[4,5]

---

[1] https://www.usnews.com/best-graduate-schools/top-law-schools/brooklyn-law-school-03102
[2] See Advisory Committee on Judicial Ethics, Opinion 14-29: "A judge **may not hold a leadership** role in a "non-partisan **feminist** coalition" which advocates for and influences legislative and social policy affecting women and children" (https://www.nycourts.gov/ipjudicialethicsopinions/14-29.htm).
[3] Advisory Committee on Judicial Ethics, Opinion 20-128 (nycourts.gov/legacyhtm/ip/judicialethics/opinions/20-128.htm) discusses judges' membership or service on the executive board of directors of an organization which ""[o]nly allows women to be general members with voting authority." The Committee advised, inter alia, that "[a]judge must always **avoid even the appearance of impropriety** (see 22 NYCRR 100.2) and must always act in a manner that promotes public confidence in the judiciary's integrity and impartiality (see 22 NYCRR 100.2[A]). A judge's extra-judicial activities must comport with his/her office and not (1) cast reasonable doubt on his/her duty to act impartially; (2) detract from the dignity of the office; or (3) interfere with his/her judicial duties (see 22 NYCRR 100.4[A][1]-[3]). Thus, a judge must not hold membership in "**an organization that practices invidious discrimination** based on age, race, creed, color, **sex**, sexual orientation, gender identity, gender expression, religion, national origin, disability or marital status […]" (22 NYCRR 100.0[M])),"
[4] https://www1.nyc.gov/office-of-the-mayor/news/268-21/mayor-de-blasio-appoints-18-judges-family-criminal-civil-court-appoints-justice-helen
[5] https://www1.nyc.gov/site/macj/appointed/civil-court.page

***McFarland Continues to Sponsor her Favorites as a Sitting Judge and Referee***

35. As if there was a need for additional irrefutable evidence of blatant corruption festering in Richmond County judiciary, while peers and administrative judges in New York court system willfully and after being notified of it, turn a blind eye: **McFarland, who was appointed as a judge in Richmond County by Mayor Bill DeBlasio, has made large prohibited donations to political candidates - including to DeBlasio himself! – while serving as a judicial officer and a judiciary employee.**

36. According to https://publicreporting.elections.ny.gov, a public database made available by the New York State Board of Elections, McFarland, year after year, has been religiously donating to political candidates and campaigns, totaling thousands of dollars, summarized below:

| Contribution Date | Amount | Contributor Name | Contributor City State | Transaction Type | Contributor Type | Recipient | Disclosure Report | Committee Type | Filer Type |
|---|---|---|---|---|---|---|---|---|---|
| 12/14/2021 | $ 100.00 | Janet L Mcfarland | Staten Island | NY A - Monetary Contributions | Individual | Trola For Supreme Court - ID# 196293 | 2021 State/Local 11-Day Pre-General | Authorized Single Candidate Committee | State |
| 11/4/2019 | $ 100.00 | Janet L Mcfarland | Staten Island | NY A - Monetary Contributions | Individual | Wlanda Martin For Civil Court - ID# 21137 | 2019 State/Local 32-Day Post-General | Authorized Single Candidate Committee | County |
| 7/10/2019 | $ 50.00 | Janet L Mcfarland | Staten Island | NY A - Monetary Contributions | Individual | Viverito Nyc - ID# 11289 | 2019 State/Local July Periodic | Authorized Single Candidate Committee | County |
| 6/27/2019 | $ 85.00 | Janet L Mcfarland | Staten Island | NY A - Monetary Contributions | Individual | Cusick For Assembly - ID# 21037 | 2019 State/Local July Periodic | Authorized Single Candidate Committee | State |
| 12/17/2017 | $ 150.00 | Janet L Mcfarland | Staten Island | NY A - Monetary Contributions | Individual | Friends Of Frank Seddio - ID# 15417 | 2018 State/Local January Periodic | Authorized Single Candidate Committee | County |
| 3/4/2017 | $ 50.00 | Janet L Mcfarland | Staten Island | NY A - Monetary Contributions | Individual | De Blasio 2017 - ID# 7218 | 2017 State/Local July Periodic | Authorized Single Candidate Committee | County |
| 3/30/2017 | $ 425.00 | Janet L Mcfarland | S.I. | NY A - Monetary Contributions | Individual | Democratic Committee Of Richmond County - ID# 10890 | 2017 State/Local July Periodic | Constituted County Committee | County |
| 9/24/2016 | $ 125.00 | Janet L Mcfarland | Staten Island | NY P - Non-Campaign Housekeeping Receipts | Individual | Kings County Democratic County Committee - ID# 11512 | 2017 State/Local January Periodic | Constituted County House Keeping Committee | County |
| 10/15/2015 | $ 100.00 | Janet L Mcfarland | Staten Island | NY A - Monetary Contributions | Individual | Committee To Elect Matthew J. Titone - ID# 6093 | 2016 State/Local January Periodic | Authorized Single Candidate Committee | State |
| 6/18/2015 | $ 75.00 | Janet L Mcfarland | Staten Island | NY A - Monetary Contributions | Individual | Cusick For Assembly - ID# 21037 | 2015 State/Local July Periodic | Authorized Single Candidate Committee | State |
| 7/10/2014 | $ 100.00 | Janet L Mcfarland | Staten Island | NY A - Monetary Contributions | Individual | Committee To Elect Matthew J. Titone - ID# 6093 | 2014 State/Local 32-Day Pre-General | Authorized Single Candidate Committee | State |
| 6/5/2014 | $ 75.00 | Janet L Mcfarland | Staten Island | NY A - Monetary Contributions | Individual | Cusick For Assembly - ID# 21037 | 2014 State/Local July Periodic | Authorized Single Candidate Committee | State |
| 10/21/2013 | $ 50.00 | Janet L Mcfarland | Staten Island | NY A - Monetary Contributions | Individual | Lou Liedy For By - ID# 13632 | 2013 State/Local 11-Day Pre-General | Authorized Single Candidate Committee | County |
| 10/10/2013 | $ 50.00 | Janet L Mcfarland | Staten Island | NY A - Monetary Contributions | Individual | Marrone For Council - ID# 14364 | 2013 State/Local 11-Day Pre-General | Authorized Single Candidate Committee | County |
| 10/7/2013 | $ 100.00 | Janet L Mcfarland | Staten Island | NY A - Monetary Contributions | Individual | Committee To Elect Matthew J. Titone - ID# 6093 | 2014 State/Local January Periodic | Authorized Single Candidate Committee | State |
| 8/9/2013 | $ 50.00 | Janet L Mcfarland | Staten Island | NY A - Monetary Contributions | Individual | Lou Liedy For By - ID# 13632 | 2013 State/Local 32-Day Pre-Primary | Authorized Single Candidate Committee | County |
| 7/9/2013 | $ 50.00 | Janet L Mcfarland | Staten Island | NY A - Monetary Contributions | Individual | Mindy For Council - ID# 620 | 2013 State/Local July Periodic | Authorized Single Candidate Committee | County |
| 5/7/2013 | $ 50.00 | Janet L Mcfarland | Staten Island | NY A - Monetary Contributions | Individual | Friends Of John Liu - ID# 11104 | 2013 State/Local July Periodic | Authorized Single Candidate Committee | County |
| 1/11/2013 | $ 105.00 | Janet L Mcfarland | Staten Island | NY A - Monetary Contributions | Individual | Friends Of John Liu - ID# 11104 | 2013 State/Local January Periodic | Authorized Single Candidate Committee | County |
| 10/2/2012 | $ 100.00 | Janet L Mcfarland | Staten Island | NY A - Monetary Contributions | Individual | Committee To Elect Matthew J. Titone - ID# 6093 | 2012 State/Local 11-Day Pre-General | Authorized Single Candidate Committee | State |
| 4/30/2012 | $ 100.00 | Janet L Mcfarland | Staten Island | NY A - Monetary Contributions | Individual | Mascolo For Staten Island - ID# 17123 | 2012 State/Local 32-Day Pre-General | Authorized Single Candidate Committee | State |
| 8/29/2012 | $ 50.00 | Janet L Mcfarland | Staten Isl | NY A - Monetary Contributions | Individual | Friends Of Gary Carsel - ID# 12208 | 2012 State/Local 32-Day Pre-General | Authorized Single Candidate Committee | State |
| 3/11/2012 | $ 100.00 | Janet L Mcfarland | Staten Island | NY A - Monetary Contributions | Individual | Your Vote Counts - ID# 15266 | 2011 State/Local July Periodic | Political Action Committee | County |

37. It is abundantly evident that McFarland continued to sponsor, while already a sitting jurist, her favorite candidates between years 2015-2021, including in the years of her issuing orders and demanding that the public obeys the law, as a referee and a judge.

38. By making payments to politicians, McFarland expressly, deliberately and knowingly – as an attorney, a court referee, and a judge, she cannot claim ignorance – **violated 22 NYCRR §§ 100.1, 100.2(A) and 100.5(A)(l)(h).**

39. 22 NYCRR §100.5(A)(l)(h) could not state it more clearly: **"Prohibited political activity shall include: (h) … making a contribution to a political organization or candidate".**

40. To preempt another possible deflection by any corrupt actors and/or their enablers: 22 NYCRR § 100.6 (A) applies the same prohibitions to **"[A]ll judges in the unified court system and all other persons to whom by their terms these rules apply, e.g., candidates for elective judicial office"**.

41. Even more specifically, as determined and clarified in numerous decisions by the Advisory Committee on Judicial Ethics for the New York State Unified Court System, court attorney referees, as quasi-judicial officials, are held to the same ethical standards as judges.[6]

42. Tellingly, a key member of McFarland's staff, Soukaina Sourouri (her court attorney) also contributed to the person who promoted and appointed her boss, McFarland, as a judge, summarized below:

| Contribution Date | Amount | Contributor Name | Contributor City | Contributor State | Transaction Type | Contribst Type | Recipient | Disclosure Report | Committee Type | Filer Type |
|---|---|---|---|---|---|---|---|---|---|---|
| 3/3/2017 | $ 60.00 | Soukaina Sourouri | Staten Island | NY | A - Monetary Contributions Individual | Mckoy (Mccaline Democratic Club Of New York) - ID# 11461 | 2017 State/Local July Periodic | Authorized Multi-Candidate Committees | County |
| 11/7/2016 | $ 20.00 | Soukaina Sourouri | Staten Island | NY | A - Monetary Contributions Individual | De Blasio 2017 - ID# 7358 | 2017 State/Local January Periodic | Authorized Single Candidate Committee | County |

43. See and compare 22 NYCRR Part 50, including political activity of court employees who are personal appointees of judges on the judges' staffs.

44. As should be already evident, it is beyond clear that in McFarland's courtroom, referring to law and precedent is merely annoying background noise, but here is a quote from a decision by the highest court of New York State, which might carry weight in the eyes of more serious jurists: in the case of another disgraced former New York judge, Ira J. Raab of Nassau County, the court analyzed the prohibitions above and reaffirmed *"**the State's compelling interest in preventing political bias or corruption, or the appearance of political bias or corruption, in its judiciary**"* (*Matter of Raab*, 100 N.Y.2d 305, 316 (2003).

---

[6] See, e.g.: https://www.nycourts.gov/legacyhtm/ip/judicialethics/opinions/08-12.htm.

45. The Court of Appeals has held that these restrictions are not only constitutionally sound, but fair and necessary to "***preserv[e] the impartiality and independence of our state judiciary and maintain[] public confidence in New York State's court system***" (Id. at 312)

46. If all these violations of most fundamental prohibitions for judiciary are brazenly out in the open, one can only imagine what deals and money exchanges can be happening behind closed doors, outside of public scrutiny. This is what the Plaintiff has asked the FBI to investigate McFarland, including as to possible application, inter alia, of 18 U.S.C. Chapter 11 and 18 U.S.C. §666 criminal provisions, given the exchange of a "thing of value" and the fact that at least one receiving politician subsequently indeed committed "official act" – DeBlasio in appointing McFarland.

### *Who cares what the public thinks, or the how Mayor appoints judges in NYC*

47. A quick foray into another tentacle of institutionalized corruption in New York is necessary: it appears that the public was given about three or four days to provide input about McFarland.[7]

48. The public notice was, apparently, published in the bowels of some obscure website – in an utterly bizarre, to put it mildly, methodology of Mayor's judicial appointments – after DeBlasio already selected McFarland! See the language in §3(a) of *Mayor's Executive Order (EO) No. 14* on Advisory Committee on the Judiciary,[8] passing from mayor to mayor.

49. It is also worth noting that, according to the EO, after the first hearing is rushed through like in McFarland's case, the public is denied even the theoretical opportunity to affect Mayor's choice, and thereafter is excluded altogether from the decision-making process – even if the judge is filling an interim position and is up for reappointment.

---

[7] https://images.law.com/contrib/content/uploads/documents/389/7593/1.-Notice-of-Public-Hearing.pdf
[8] https://www1.nyc.gov/assets/home/downloads/pdf/executive-orders/2022/eo-14.pdf

50. Plaintiff's complaint and repeated attempts to get a cogent answer from Mayor's Advisory Committee as to how, and via which exact channels or methods of communication he - and the public - can be notified significant time in advance of all public hearings ahead of judicial appointments, have remained unanswered for many months. It should be stated, for the sake of completeness, that a member of the Advisory Committee, Ms. Monica Drinane, did reach out to Plaintiff on April 26, 2022, to discuss McFarland's conduct, and did mention that the Committee has the authority to not recommend her reappointment. Nonetheless, as sadly expected, evidently nothing has been done, and McFarland continues to wield unabridged power over helpless children and parents.

### *McFarland Appointing and Protecting Favorite Attorneys - Hiding Nepotism from Public*

51. In addition to all the above, there is clear initial evidence of rampant corruption in Richmond County Family Court in yet another form – channeling of public money to close parties via lucrative state-funded assignments of attorneys for some litigants (known as "18B") and for children (known as "AFC") – likely those attorneys who were instrumental in the appointment of the reciprocating judges. This motivation scandalously surfaced to such heights that it necessitated public scrutiny and reaction, yet nothing seems to have changed, and all it was just another smoke and mirrors exercise to temporarily placate the public, while continuing to do the same to this day: see *"Fiduciary Appointments in New York - A Report to Chief Judge Judith S. Kaye and Chief Administrative Judge Jonathan Lippman".*[9]

52. McFarland clearly has a preferred clique of lawyers who are appointed intermittently to both types of lucrative state-funded roles. Upon checking McFarland's court calendar for just a

---

[9] https://nycourts.gov/ip/gfs/igfiduciary.html

short period of 3 months, Ian Berliner appeared as a court-assigned attorney in 25 cases, and Rita Kaufman in 13 cases:

| # | File # | Role |
|---|--------|------|
| 1 | 17315 | Berliner, Ian Craig (18B (Assigned Counsel)) For Respondent |
| 2 | 18156 | Berliner, Ian Craig (18B (Assigned Counsel)) For Respondent |
| 3 | 18625 | Berliner, Ian Craig (Attorney for Child) For Child |
| 4 | 19599 | Berliner, Ian Craig (Attorney for Child) For Child |
| 5 | 25109 | Berliner, Ian Craig (Attorney for Child) For Child |
| 6 | 25027 | Berliner, Ian Craig (Attorney for Child) For Child |
| 7 | 28149 | Berliner, Ian Craig (Attorney for Child) For Child |
| 8 | 29129 | Berliner, Ian Craig (Retained Attorney) For Petitioner |
| 9 | 33344 | Berliner, Ian Craig (Retained Attorney) For Petitioner |
| 10 | 33662 | Berliner, Ian Craig (18B (Assigned Counsel)) For Respondent |
| 11 | 33800 | Berliner, Ian Craig (Attorney for Child) For Child |
| 12 | 38176 | Berliner, Ian Craig (Attorney for Child) For Child |
| 13 | 39152 | Berliner, Ian Craig (18B (Assigned Counsel)) For Respondent |
| 14 | 41131 | Berliner, Ian Craig (18B (Assigned Counsel)) For Petitioner |
| 15 | 41703 | Berliner, Ian Craig (18B (Assigned Counsel)) For Respondent |
| 16 | 41741 | Berliner, Ian Craig (Attorney for Child) For Child |
| 17 | 41910 | Berliner, Ian Craig (18B (Assigned Counsel)) For Petitioner |
| 18 | 42329 | Berliner, Ian Craig (Attorney for Child) For Child |
| 19 | 42710 | Berliner, Ian Craig (18B (Assigned Counsel)) For Petitioner |
| 20 | 42711 | Berliner, Ian Craig (18B (Assigned Counsel)) For Respondent |
| 21 | 42803 | Berliner, Ian Craig (18B (Assigned Counsel)) For Respondent |
| 22 | 42877 | Berliner, Ian Craig (Guardian ad litem) For Respondent |
| 23 | 42925 | Berliner, Ian Craig (Attorney for Child) For Child |
| 24 | 43233 | Berliner, Ian Craig (18B (Assigned Counsel)) For Respondent |
| 25 | 43347 | Berliner, Ian Craig (18B (Assigned Counsel)) For Respondent |
| 26 | 43465 | Berliner, Ian Craig (Attorney for Child) For Child |

| Row Labels | Count of Role |
|------------|---------------|
| Berliner, Ian Craig (18B (Assigned Counsel)) For Petitioner | 4 |
| Berliner, Ian Craig (18B (Assigned Counsel)) For Respondent | 8 |
| Berliner, Ian Craig (Attorney for Child) For Child | 12 |
| Berliner, Ian Craig (Guardian ad litem) For Respondent | 1 |
| Berliner, Ian Craig (Retained Attorney) For Petitioner | 1 |
| Grand Total | 26 |

| # | File # | Role |
|---|--------|------|
| 1 | 14897 | Kaufman, Rita (18B (Assigned Counsel)) For Petitioner |
| 2 | 27688 | Kaufman, Rita (Attorney for Child) For Child |
| 3 | 30050 | Kaufman, Rita (18B (Assigned Counsel)) For Petitioner |
| 4 | 31188 | Kaufman, Rita (18B (Assigned Counsel)) For Respondent |
| 5 | 31232 | Kaufman, Rita (Attorney for Child) For Child |
| 6 | 32915 | Kaufman, Rita (18B (Assigned Counsel)) For Petitioner |
| 7 | 33449 | Kaufman, Rita (Retained Attorney) For Petitioner |
| 8 | 35750 | Kaufman, Rita (18B (Assigned Counsel)) For Petitioner |
| 9 | 40573 | Kaufman, Rita (Attorney for Child) For Child |
| 10 | 41237 | Kaufman, Rita (Retained Attorney) For Petitioner |
| 11 | 42208 | Kaufman, Rita (18B (Assigned Counsel)) For Petitioner |
| 12 | 42628 | Kaufman, Rita (Attorney for Child) For Child |
| 13 | 42710 | Kaufman, Rita (Attorney for Child) For Child |
| 14 | 43171 | Kaufman, Rita (18B (Assigned Counsel)) For Respondent |
| 15 | 43173 | Kaufman, Rita (Attorney for Child) For Child |

| Row Labels | Count of Role |
|------------|---------------|
| Kaufman, Rita (18B (Assigned Counsel)) For Petitioner | 5 |
| Kaufman, Rita (18B (Assigned Counsel)) For Respondent | 2 |
| Kaufman, Rita (Attorney for Child) For Child | 6 |
| Kaufman, Rita (Retained Attorney) For Petitioner | 2 |
| Grand Total | 15 |

54. In this context the following ominous event needs to mentioned: one of McFarland's favorites, Ian Berliner, personally appointed by McFarland's predecessor to represent Plaintiff's ex-wife ("Stroutsovsky") without any hearing or investigation as to the latter's ability to pay, menacingly intimated in a phone conversation held shortly after the custody case started that in Staten Island things are done differently. Differently indeed.

55. A public request to obtain the assignment records from Richmond County Family Court — remained ignored, in violation of Public Officers Law §89(3)(a). Appeal to Chief Judge DiFiore and Chief Administrative Judge Marks were ignored.

56. Cf. *United States v. Vargas*, 74 M.J. I, 8 (C.A.A.F. 2014): "a judge is ultimately responsible for the control of his or her court" (referencing *Taylor v. Kentucky*, 436 U.S. 478, 489 n.17 (1978)).

57. Clearly, Richmond County Family Court and judges like McFarland have no problem lecturing others on the duty to obey the law and ordering New Yorkers around – but, when confronted with their own violations, they see no problem disdainfully ignoring the public.

58. Are we back in the days of unaccountable, capricious royalty, who can do whatever they want to their subject slaves while being accountable to no one? Quis custodiet ipsos custodes? A rhetorical question, and hopefully this Honorable Court and the federal system will find the courage to protect brutally oppressed New Yorkers from these arrogant, stunning displays of boundless hypocrisy and in-your-face violations of the very rules that were sold to the public as preventing exactly this very nepotism and blatant corruption.

59. To conclude this chapter, it is appropriate to quote from the federal complaint submitted by Alexis Marquez, a former court attorney – "one of their own", a system's insider for many years – against a host of New York judges, including Marks and DiFiore, as well as Douglas Hoffman, who also "specialized" in the money-making, children-destroying machine of family law: Hoffman held a position not only of a judge in Matrimonial Division of New York Supreme Court, but also of a Supervising Judge for the New York County Family Court. Hoffman, according to Marquez, sexually harassed her, and was subsequently protected by other judges, all the way to the very top of the same New York State Unified Court System, which currently oppresses and covers up the astonishing, audacious in their cynical impunity, violations of fundamental freedoms of the Plaintiff, Marta Bryceland, Marcello Roque, John Kemp, and others mentioned above – and thousands of other parents and children. See *18-cv-07315 Alexis Marquez v. Douglas Hoffman et al.* (Southern District of New York).

60. The insider Marquez attests in her April 22, 2019 complaint as follows, confirming everything that those on the outside, on the receiving end of the same corrupt pyramid, knew all along (¶¶ 541-557; numbering omitted; emphasis added):

"The New York State court system engages in widespread patronage, cronyism, and nepotism in its employment practices, further deterring discrimination and harassment complaints and facilitating retaliation against complaining employees. **The history of corrupt hiring practices in New York's judicial branch is long and well documented. For over a century, hiring and appointments in the New York State court system – of judges and of nonjudicial employees alike – have been the subject of scrutiny, investigations, public outcry, and widespread criticism and concern.**

Today, the overwhelming majority of attorney jobs in the New York State court system – including thousands of public positions for law clerks, court attorneys, pool attorneys, administrative and/or managerial attorneys, etc. – are not subject to competitive hiring.

Attorney hiring in the court system works, approximately, as follows: [f]irst, the overwhelming majority of job openings for attorneys are not publicly listed or advertised. For example, neither Hoffman, Scarpulla, nor Silver publicly advertise openings for either their term-limited law clerk positions or their permanent court attorney positions. Second, information about job openings is shared by judges and court system administrators through informal whisper networks. **For example, a judge on the Court of Appeals might email a judge on the Supreme Court to say, approximately: "You didn't hear it from me, but two positions are opening up in the First Department."** Third, information about an opening is shared with a favored candidate – e.g., a family member, a friend, a friend of a political ally, etc. – and the candidate is instructed to apply for the position. **For example, a judge's grandson might be told to apply for a position that is not publicly advertised.** Fourth, connected patrons and sponsors may call, advocate, and exert pressure in favor of the candidate. **Such advocacy can be quite aggressive, sometimes culminating in shouting and threats if the hiring party resists.**

The pressure to make patronage hires severely restricts the pool of candidates for attorney positions in numerous ways. For example, **even judges who seek to employ competent attorneys refuse to publicly advertise positions for fear of being forced to make patronage hires** and instead rely on personal or anonymous networks to find candidates.

This is almost entirely a closed hiring process. **Neither members of the public nor court system employees can learn about or apply for these public sector jobs.** A small subset of attorney job openings in the New York State court system are publicly listed and are ostensibly subject to a "panel selection process." However, the appearance of a competitive hiring process for even these positions is misleading. Panel selection openings are frequently awarded to predetermined candidates; rejection notices are not sent out; hiring records are kept to a minimum; and, often, interviews are not conducted.

According to Scarpulla, publicly posted positions are fraudulent and candidates are preselected: "Those job postings are not real. This has nothing to do with merit. It has to do with who is next in line and who calls on behalf of that person."

In short, attorney jobs at all levels of the New York court system are acquired primarily through friends, family members, and political patrons. **Jobs are used as bargaining chips and traded for political favors**. Merit and **professional competence** are secondary factors in hiring and appointment decisions, **if they are considered at all**.

Furthermore, the climate of **secrecy, fear, and corruption** surrounding hiring and employment in the New York court system is astounding. For example, Scarpulla warned Plaintiff not to ask questions about employment-related matters **in writing** because she might get fired. She instructed her law clerks not to discuss employment issues over work email because their communications might be monitored.

The court system's noncompetitive hiring practices **have caused, and continue to cause, systemic damage to the court system, its employees, the State of New York, and the public**. First, the court system's noncompetitive hiring practices directly result in ongoing systemic discrimination, deterrence, suppression, and retaliation in response to protected opposition by court system employees. Closed access to job information in the New York court system: a. **functions as a powerful deterrent to employees** who want to report harassment or discrimination but fear losing access to job information; b. allows otherwise public job information to be used as a **bargaining chip to bribe** and obtain silence from employees experiencing harassment or discrimination; and c. serves as a mechanism of retaliation to punish employees who report harassment or discrimination."

61. Similarly, former court attorney Marquez states the following, fully confirming that the corruption and "run to the bottom", experienced by those whom the court system is supposed to serve, is spreading from the deep, all-permeating rot from within (see ¶¶306-308):

"The court system's Office of the Inspector General does not operate as an independent watchdog. On information and belief, **the office has been captured** by individual judges, administrators, and the court system's Counsel's Office. The office has been misused, variously, **to conduct politically motivated investigations; to force nonjudicial employees to resign**; to suppress discrimination, harassment, and retaliation complaints; **to facilitate willful blindness and shield administrators from information about complaints**; and to prepare for litigation against complaining employees.

The court system's Office of the Inspector General **plays a central role in suppressing discrimination, harassment, and retaliation complaints against judges** and other highly placed court system officials. [..].

**The New York State court system's policies, website, and statements and/or omissions by court system administrators are intentionally vague, misleading, and designed to**

**create the fraudulent impression** that the Office of the Inspector General has jurisdiction to investigate and address complaints against judges."

62.  It is in this hellish, quid-pro-quo, thoroughly and irreversibly rotten system that McFarland started her career as a court attorney – and Marquez testifies in federal complaint, under the penalty of perjury, that court attorney jobs are not awarded just to anyone. McFarland is clearly aligned with the real code of conduct of New York judiciary, not the one that this corrupt pyramid presents to the public – not only because otherwise she wouldn't have survived and thrived in the described swamp, but also based on McFarland's despicable, lawless, un- and anti-constitutionals actions as documented above and below, and in Bryceland's complaint, and in Roque's and Kempf's attestations.

63. Marquez has clearly put her legal career at grave risk, if not outright ended it, by publicly going against the top echelons of what clearly looks like entrenched judicial mafia, naming DiFiore, Scarpulla, et cetera, in dangerous deviation of the unwritten Omerta code she narrates. This courage is a powerful indication of the truthfulness of Marquez' testimony – she has a lot to lose, but she went all in, exposing the dirty judiciary laundry and allowing outside victims to corroborate and provide deeper context to their own horror stories.

64. Marquez eloquently describes how the New York court system de-facto negatively selects for the least professional, least courageous, least competent, but most immoral, most intimidated, and most corrupt actors. The better ones don't survive, or are beaten and bullied into full submission. Not only this deplorable culture is de-facto defrauding the public by demanding astronomical amounts of money that go to "judges' grandsons" and "whisper network appointments", but it also provides abysmal "service" which actually harms, not helps New Yorkers.

65. Those on the inside, who enjoy taking this immoral, dirty money, may or may not understand, but **the negative selection is actually exactly what those who created, maintain, and protect the system want: unscrupulous, amoral, ungodly employees, court attorneys, and judges, are much more likely to have no moral issues not only with covering predatory behavior experienced by Marquez – but with breaking and abusing children and parents for profit, and maybe even for sadistic pleasure so characteristic of tyrants.**

66. This is the rotten system McFarland climbed for many years, and this is the system that is now defending McFarland, leaving parents-victims no choice but to turn to this Court for urgent plea for help and exposure in front of a jury of fellow Americans, who can, hopefully, finally reign in this gigantic Molech, this pagan, child-devouring beast of corruption, avarice, and disdain.

## CUSTODY CASE BACKGROUND

67. The background of the custody case is laid out in Plaintiff's Motion to Impose Sanctions on Stroutsovsky. Stroutsovsky and her attorney, Berliner, never denied the content of that motion – because they know it's all true. Stroutsovsky is a sophisticated liar and manipulator, who, among other crimes, tried to entrap the Plaintiff by fraudulently swearing, in a written and signed affidavit in front of the clerk of Richmond County Family Court, that a superseded parenting agreement is active.

68. For the sake of completeness: the same facts were submitted by the Plaintiff also to Staten Island District Attorney in order to prosecute Stroutsovsky for this and other crimes of perjury documented in the underlying court case. For now, the District Attorney – in the same vein of evading accountability rampant in New York government – referred the case back to the Richmond County Family Court, who (Judge DeLizzo) deferred making the decision to the end of the custody case.

69. Nothing in the above should be construed as Plaintiff's forfeiting his rights to further pursue all available legal remedies in relation to Stroutsovsky's crimes, against Stroutsovsky, District Attorney, or DeLizzo – it is just that the sheer scope, the ocean of corruption and lack of accountability of countless state- and state-affiliated actors, into which Plaintiff has been thrown just by trying to stay a father, necessitates prioritization.

70. In a nutshell: Stroutsovsky and the Plaintiff divorced in Seattle in 2018, and Stroutsovsky took the children across the country in 2019. Stroutsovsky shamelessly lied in Seattle court proceedings the same way she lies in Staten Island.

71. Seattle courts and government are equally corrupt, subversively enacting the same godless, despotic communist agenda as New York: cf. "CHAZ" zone which sprawled there out of all cities in 2020, **as well as the Presidential Memorandum and the Department of Justice declaration in September 2020 on Seattle and New York, mentioned in the same breath, as lawless jurisdictions, which refuse to prosecute crimes and purposefully defund and disempower law enforcement.**[10]

72. Facing insurmountable corruption and similar all-permeating lies, I had to save resources to survive and stay strong for the psychologically abused children, and settled the case for essentially 50/50 custody, in the vane hope that Stroutsovsky, after getting hundreds of dollars in support payments, will come to her senses, finally start working as a Registered Nurse (RN), and will peacefully co-parent instead of alienating the children.

73. Sadly, history proves that appeasing the aggressor never works, and my hopes were promptly crushed: Stroutsovsky kept alienating the children, culminating in her taking them to the other side of the continent. She was allowed to do so by an equally complicit and willfully blind

---

[10] https://www.justice.gov/opa/pr/department-justice-identifies-new-york-city-portland-and-seattle-jurisdictions-permitting

Seattle court, who used Stroutsovsky's lies that she needs to move to New York in order to start working as an RN, and, more critically, her declarations that the Seattle parenting plan will be reinstated once I moved to New York as well, as a pretense to allow tearing the children from the father and from the city in which they spent majority of their young lives.

74. As documented in innumerous petitions and motions I filed in Richmond County Court, as soon as she moved to New York, Stroutsovsky ramped up the alienation, and, of course, refused to go back to the Seattle schedule after Plaintiff, with G-d's grace, was able to secure employment and move to New York as well. I had no choice but to initiate the custody case, which has been pending for over two years now. Stroutsovsky also never started working as an RN, in order to manipulatively claim a lower standard of living and continue squeezing me for support money through Richmond County Support Magistrate, Marjorie Steinberg (who engaged in a host of separate constitutional violations, as is custom in Richmond County Family Court) and even through the children themselves, by coaching them to demand large cash gifts.

75. This was Stroutsovsky's plan all along, and family courts in both states, being funded by the same Title IV-D money, happily obliged.

76. Stroutsovsky's despicable behavior is a classic example of psychological child abuse, known, among other names, as parental alienation or gatekeeping. Stroutsovsky, like millions of other vindictive ex-spouses enabled by corrupt courts and affiliated state-agents serving monetary and ideologic agendas, is doing it out of narcissistic revenge and to secure many years of money payments – from the Plaintiff and from the government.

77. **An amicus brief by an expert witness, Linda Gottlieb**, was submitted to – and ignored by – McFarland, as a background scientific overview.

## REFEREE BYUN AND MCFARLAND

78. Upon initiation of the custody case by the Plaintiff, it was routed for adjudication by a court referee, ALEXANDRA BYUN ("Byun"). The record and the transcripts from the custody case proceedings are voluminous, but they are available to the Defendant, and are hereby explicitly incorporated by reference. If Honorable Court so guides, such records will be attached as supplementary exhibits.

79. Byun swiftly proceeded to appoint two Staten Island favorites from the same obfuscated clique of court friends, IAN BERLINER ("Berliner") for Stroutsovsky, and RITA KAUFMAN ("Kaufman") as attorney "for the children" (that's the pretense).

80. Byun made both assignment unilaterally, without any justification or argumentation, and without any adversarial hearing to determine whether the children need an attorney, which is not necessary (New York Family Court Act §249(a)), and wasn't necessary in this simple case of enforcing Stroutsovsky's court declarations and promises to return to Seattle's parenting plan: the children had no attorney in Seattle. Of course, non-complicated cases generate no money for the court-surrounding cottage industry of rotten nepotism and obscure assignments, let alone may result in less damaged children - and Kaufman immediately embarked to deliver: she has been stoking further alienation of the children, lying about Plaintiff's son's wishes to live with the father, conveniently oscillating – as the whole institution of attorney(s)-for-children ("AFC") was carefully and insidiously designed – between being a "lawyer" and being a witness. In this, Kaufman continued – to this day – in furthering the overarching goals and expectations of the hands that feed her, as described above and in multiple complaints Plaintiff filed against Kaufman to the AFC Panel and Grievance Committee, who proved to be similarly useless and complicit in

the above-described money-making, ideological machinery maintained by the New York State and through its judiciary arms.

81. As one telling example, Kaufman fraudulently accused Plaintiff of violating a traffic law as to child restraint, fully siding with the alienator, yet neither Byun nor the ostensibly overseeing bodies so far imposed any accountability on this disgraceful, deliberately lying, incompetent attorney and abuse-abettor.

82. Similarly, Byun appointed the other court favorite, Berliner, individually, in violation of law and precedent, without bothering with competitive rotational appointment mechanism mandated by law, and without any semblance of adversarial hearing which would expose, among other things, that Stroutsovsky – and Berliner and the court alongside her – is deliberately abusing the public fisc by refusing to work and maximize her earning potential as an RN. All this, as always, in blatant violation of – and not even bothering to refer to – binding precedent, written to prevent the exact obliteration of the level-playing field the Plaintiff has been experiencing in this case; the abuser is protected by de facto two state-funded attorneys, who actually are paid more the more they litigate the targeted parent into poverty: see *Carney v Carney* (2016 NY Slip Op 26319) [54 Misc 3d 411], *Cohen v. Cohen*, 33 Misc 3d 448 (Sup. Ct. Nassau Cty. 2011), *O'Shea v O'Shea*, 93 NY2d, 187 (1999); *De Cabrera v Cabrera-Rosete*, 70 NY2d 879 (1987).

83. Of course, the system that allowed Berliner's individual assignment by Byun is another part of the described, all-encompassing scheme aiding and abetting the alienation, covering the psychological child abuser like Stroutsovsky in layers upon layers of government-funded protection, deflection, deception, ignoring black-letter law and statutes, and feet-dragging by financially incentivized players: attorneys like Berliner, AFCs like Kaufman, judges like Byun and McFarland, AFC panels and grievance committees ignoring attorneys' unlawful and unethical

conduct, appellate judges (a few were named as defendants by Marquez in her complaint quoted above) and court of appeals judges issuing one-line decisions ignoring explicit state laws and without any argumentation which taxpayers paying their salary would expect from any other "service provider".

### *Entrenched Culture of Ignoring the Duty to Provide Arguments*

84. Throughout these proceedings, Richmond County Family Court, by all three public servants who touched the case, deliberately failed, time after time, to perform their most basic judicial duty: their decisions, time after time, consisted of a cookie-cutter form with misleading appeal rights notice – and not a thoughtful analysis public would expect in sensitive, life-changing matters.

85. Even as to administrative agencies, the Supreme Court of the United States ordered, in *Encino Motorcars, LLC v. Navarro*, 579 U.S. (2016), as follows (emphasis added):

> "One of the basic procedural requirements of administrative rulemaking is that an agency **must give adequate reasons for its decisions**. The agency "must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.*, 463 U. S. 29, 43 (1983) (internal quotation marks omitted). That requirement is satisfied when the agency's explanation is clear enough that its "path may reasonably be discerned." *Bowman Transp., Inc. v. Arkansas-Best Freight System, Inc.*, 419 U. S. 281, 286 (1974). **But where the agency has failed to provide even that minimal level of analysis, its action is arbitrary and capricious and so cannot carry the force of law**. See 5 U. S. C. §706(2)(A); *State Farm*, supra, at 42–43".

86. All of Byun's decisions – and, shockingly, all of the Appellate Division and New York State Court of Appeals decisions so far – "**failed to provide even that minimal level of analysis**", rendering all their actions "**arbitrary and capricious, and so cannot carry the force of law**". It is beyond clear that all such arbitrary and capricious restrictions imposed upon

Plaintiff's children and the Plaintiff should have been **immediately lifted – yet the New York Court system continues to ignore all arguments to this day.**

87. If this is the Supreme Court standard imposed on administrative agencies, infinitely more so is expected from the highest holders of public trust – the judges. An indeed, the Supreme Court stated unequivocally:

> **"Judicial decisions are reasoned decisions. Confidence in a judge's use of reason underlies the public's trust in the judicial institution. A public statement of those reasons helps provide the public with the assurance that creates that trust."**

See *Rita v. United States*, 551 U.S. 338, 356 (2007).

### *Byun gives back only the weekends, still infringing on Plaintiff's time – with zero reasons*

88. After months of inaction, Byun, finally found a morsel of courage to stand up to the bully/alienator, Stroutsovsky, and gave me and the children alternating weekends back. Byun didn't care to hold Stroutsovsky accountable to her promises made to elicit the relocation, or to explain why she unlawfully decided to keep Plaintiff on limited schedule, and didn't order full reversal to the Seattle parenting plan.

89. Plaintiff's first – among four – appeals to the Appellate Division was dismissed in a canned, cut and pasted from one decision to another, one-liner, indicating that the overseeing court doesn't care, and, most likely, doesn't bother to read what is submitted to it. As mentioned, in all of its decisions, the Appellate Division didn't bother to provide any reasoning, completely and willfully ignoring New York Civil Practice Law and Rules ("CPLR") provisions and the following argument – in a typical pattern of New York State Unified Court System: ignore the problem as long as possible, until it goes away – or it becomes impossible to ignore anymore:

**"Right to Appeal Before this Court**
The abovementioned Order is appealable as of right, according to New York Civil Practice Law and Rules (CPLR), section 5701, subsection (a) (2) (i) (*appeal from an order which refused or modified a provisional remedy: parenting time with my children*

*pending trial in the custody case above*), subsection (a) (2) (v) (*affects a substantial right: constitutionally protected right of a parent to raise his children and the reciprocal parent-children right enjoy each other's society, as well as my constitutional rights to due process, equal protection under law, and counsel*), subsection (a) (2) (vi) (*in effect determines the action: perpetuating the status quo of separating the children from their father, leaving them under practically unlimited emotional control by Respondent, and their subsequent alienation and indoctrination, de-facto fossilizing the very psychological abuse against which I have been desperately seeking Court's protection since March 2020*).

Alternatively, and only out of abundance of caution, **given the gravity and repeated nature of severe constitutional violations which took place before the Court,** as has been abundantly documented in my pleadings, and, especially, **given the irreversibility of the ongoing psychological and emotional damage inflicted on the children by prolonged separation from their loving father, whom they love and miss tremendously,** I am hereby requesting to consider this Notice as an application for appeal by permission, and to subsequently adjudicate it as an appeal for which such leave was granted, according to section 5701(c) of the CPLR.

Still alternatively, and only out of similar abundance of caution, I am hereby requesting an affirmation that a permission to appeal according to section 5701(c) of the CPLR has already been granted by the originating Court in the appealed Order itself, which stated that "[I]f you were in court for the hearing and this order is entered by a judge, pursuant to section 1113 of the Family Court Act, **an appeal** [*not leave to appeal – RB*] **from this order must be taken** within 30 days of receipt of this order by appellant in court".

90. Plaintiff's notices of appeals are similarly incorporated in this complaint by reference.

### *Byun and McFarland treat the custody case like a used car*

91. As Byun continued to drag the case along through slow scheduling, Byun was asked by the Plaintiff to rule on a contested school vacation.

92. Byun failed to issue a decision in a timely fashion, and when reminded to do so a shocking result emerged: Byun unlawfully "outsourced" the most pivotal responsibility – decision making – and let her colleague, McFarland, then still also a referee, to make the decision instead of Byun!

93. Clearly, both Byun and McFarland don't treat making decisions in custody cases as more important than, say, car service: who cares who is the mechanic flushing the oil when a car is

brought for periodic 10,000 mile maintenance? Who cares if the deciding jurist knows the case or heard the arguments?

94. Cf. §21 of the New York State Judiciary Law:

"A judge other than a judge of the court of appeals, or of the appellate division of the supreme court, **shall not decide** or take part in the decision of a question, **which was argued orally in the court, when he was not present and sitting therein as a judge.**"

95. McFarland was not present or sitting as a judge (or a referee, for that matter, to whom the provision equally applies) during the oral arguments regarding the vacations in front of Byun. Still, she had no problem issuing a decision in a case she has zero knowledge of.

96. **But then again: what is this ignored statute different from all other ignored statutes? The real question is: what recourse the public has when the judiciary is subverted, and when the judges themselves ignore the law?**

97. This event is powerfully reflective of the way New York court system wants to treat custody cases: as a Chinese-factory conveyer or traffic light violations. For Plaintiff, the children are the world – but for McFarland and the surrounding rotten system, described in greater detail above, they are just a case number, a pretense to dispose of, while making money and justifying federal Title IV-D matching, with a bonus of creating more misery and government dependency and control down the line.

98. I have submitted two letter complaints against McFarland to HELENE SACCO ("Sacco"), designated as a "supervising" judge for Richmond County Family Court, who since retired or was removed, describing the shocking violations above – only to be typically discarded.

*False allegations and severing father-children contact*

99. Frustrated with the fact that the children were allowed to spend weekends with me, Stroutsovsky expectedly concocted yet another false allegation – a very common tactic of abusers

and alienators (see *Gottlieb's amicus brief* above), precisely because they know its effectiveness in immediate isolation of the children from the targeted parent by incompetent and complicit judges like Byun and McFarland.

100. Byun jumped on the opportunity to isolate the children from the Plaintiff, despite glaring motivation of the alienator, and her history of manipulation and lies. She ordered the favorite oppressive tool in the regime's armamentarium: supervised visitations. These continued for almost two years, because subsequent judges, DeLizzo, and mostly McFarland equally refused to even look into the facts.

101. Byun, and later McFarland, refused to grant me the elementary fair hearing before my and my children's reciprocal freedom of association, in another typical, malicious, and deliberately systemic violation of Constitutional guarantees of Due Process and even explicit New York and federal precedent: see *Matter of Elizabeth C. (Omar C.)*, 2017 NY Slip Op 08370 (156 AD3d 193) and U.S. Court of Appeals for the Second Circuit in *Gottlieb v County of Orange*, 84 F3d 511 (1996), stating that due process protections of Family Court Act §1028, guaranteeing a fair hearing in three days and application of "imminent risk" standard, were available not only in situations where a child is removed from the home, but where the parent is excluded from contact with the child as well.

102. **To pause the narrative here: this is exactly how New York family courts enable alienation, as this exactly the scenario experienced by Marta Bryceland, Marcello Roque, and hundreds thousands of other cases across the state (and the nation): after the abuser/alienator makes a complaint, the judges on all levels of New York judiciary willfully and systemically ignore the law mandating a fair hearing and a finding of "imminent risk"**

in order to separate a child from a parent. From then on, constant stonewalling ensues – until the targeted parent can no longer fight the abuse, or until the child is alienated.

103. **This catastrophe, this godless manufacturing of orphans with living, loving parents, now lies bare in front of this Honorable Court. It has to be stopped. Maybe the reader of these lines has a place reserved in a bunker somewhere, but the hosts of fatherless and motherless children continue to be manufactured by judges like McFarland. There are now second and third generation of alienated children – but the targeted parents unite, online and offline, and more and more Americans understand exactly what is going on, and what the government is trying to do: forcefully cutting natural bonds between children and parents.**

104. **This institutionalized abuse under color of law, perpetuating inside court walls, has to be stopped through legal actions, like the one the Plaintiff is bringing here. Any delay will hasten the collapse of our society – which is exactly what the subversion actors want. Does this Court want it too?**

### *Vindication and full dismissal of abuser's fraudulent complaint*

105. To run forward in the narrative just to close the loop: two months ago, Plaintiff was completely vindicated, and the allegations fabricated by the abuser Stroutsovsky were fully and decisively unfounded by ACS attorney and Judge Harris ("unfounded": another Orwellian double-speak, designed to disguise a parallel system of punishments and liberty deprivations created by the government in order to bypass the constitutional protections guaranteed to accused in criminal courts).

106. Still, McFarland refused to act, and refused to issue an order reuniting the children with the father, again and again enabling the abuser and the alienator, maliciously, yet plausibly

deniably, continuing to drag the case toward her ultimate goal of solidifying and formalizing the separation in accordance with the monetary and ideological goals she serves.

### *Recusal of Byun and assignment of DeLizzo*

107. After all the above-described unlawfulness and abuse at the hands of Byun, Plaintiff requested her recusal, and she complied.

108. Another judge, Peter DeLizzo, was assigned to the case, which he also scheduled weeks in the future, despite knowing about the ongoing alienation.

109. According to his annual reports, DeLizzo is an open homosexual. I have nothing against adults doing whatever they want in their private homes, although homosexuality is a grave sin according to my faith – but it is baffling (or not) why, like the childless McFarland, DeLizzo is allowed to make decisions regarding children which he doesn't have. Of course, shoving communist ideology down the throats of Americans is the answer – it's easier to force child-damaging outcomes when executioners are childless.

110. DeLizzo continued the pattern of constitutional violations, albeit in a more careful fashion: he ordered that the supervised visitations can be outside and not in the stifling, decrepit, small room in CFS (Comprehensive Family Services) offices – designed specifically to make the visits as burdensome, prison-like, and unpleasant as possible for the children: loud metal doors and stairs, buzzer to get in and out, worn out carpet and no air conditioner, situated in one of the most hideous parts of Staten Island.

111. In addition, DeLizzo "tongue lashed" both Berliner and Kaufman, admonishing them for unethical behavior toward the plaintiff (directly communicating with the court behind the back of self-represented father, which, from the casual way it was done by both until exposed by the court, is viewed by both court "officers"/friends as normal) – but did nothing beyond that. Berliner and

Kaufman continue to practice law, "represent" children, and collect public funds. Lip service for all involved, and a side show for the Plaintiff to imitate accountability – nothing else.

112. As to the substance of the case, DeLizzo continued the systemic line: he similarly refused to abide by due process, deflected and prevented any substantive hearing on the fraudulent allegations by Stroutsovsky, and denied all my motions to reconsider under the pretense of "pending appeal" and his fear to make a conflicting decision.

113. DeLizzo's vocalized argumentation for his persistent refusal to reconsider the supervising order was in violation of explicit law (CPLR §2221) and precedent. DeLizzo rejected an axiomatic legal distinction between an appeal to a higher court and a review by the originating court based on passage of time and change of circumstances. Like his family court colleagues before and after, DeLizzo ignored abundant case law and fundamental concepts of civil litigation: see, e.g. *Henry v. Sterling Vision, Inc.*, 2000 WL 35924975 (N.Y.Sup.), referring to *Lowrance v. Achtyl*, 20 F.3d 529, 533 (2d Cir. 1994):

> **"Although petitioners have also filed a Notice of Appeal, the Court retains jurisdiction to decide timely motions for reconsideration".**

114. DeLizzo's repeated refusal to review the ongoing isolation of the children was clearly motivated exactly by the same motives that led Byun's and McFarland's to ignore law, precedent, the U.S. Constitution, common sense, not to mention laws of G-d and human decency: enabling and prolonging the alienation to further the systemic monetary and ideological goals above, punishing me for daring to challenge his and his colleague's decisions, and forcing me into abandoning the appeals to remove the risk of exposing the lawlessness and abuse in Richmond County Family Court, which could potentially lead to forcing the family court to actually follow the law.

115. As an example of many indications of his premediated intent to penalize and retaliate, DeLizzo said "I know" when Berliner defamatorily accused the Plaintiff of "running around" the court by exercising his right to appeal decisions, insinuated that Rebbetzin Chani Katzman, a proposed supervisor, a head of a local Jewish daycare center, might have a criminal record, and cynically offered me – which was nothing but a veiled threat – to vacate the supervised visitation order knowing full well that there is no alternative and the contact with the children will be further diminished by such an order.

116. The crescendo of Constitutional violations by DeLizzo arrived when he refused to grant Plaintiff the right to try the case in front of a jury of impartial Americans, as guaranteed by Sixth and Seventh Amendments to the U.S. Constitution.

117. I had challenged the denial, along with other violations, in this Court: *21-CV-5353 Brik v. DeLizzo*, and later, in the Second Circuit: 22-140 *Brik v. DeLizzo*. That process concluded without any adjudication on the merits of my Sixth and Seventh Amendment arguments.

### *McFarland's Treatment of Plaintiff*

118. After I filed the federal complaint against the decision to deny me the fundamental right for jury trial, DeLizzo suddenly disappeared from the case. No notice was given to me, and I subsequently discovered that the case was assigned to McFarland.

119. It was clear to me that McFarland, who unlawfully issued, as described above, a decision in Byun's case of which she had no knowledge, and after being directly implicated by me in my complaints against Byun for allowing McFarland to issue such decision (or, should it be said, "oil change"?) cannot remain impartial, I respectfully moved for McFarland recusal, and brought the odd assignment to such an implicated judge, out of all available judges, to the attention of Sacco.

120. Surprisingly – or not – McFarland saw no problem to claim impartiality and decided to hold on to this case.

121. As anticipated by the Plaintiff, McFarland immediately proceeded to retaliate against him.

122. On September 30, 2021 CFS suddenly cancelled one of the vanishingly rare meetings (1 hour every two weeks, amounting to less than 1/3 of a percent of parenting time – again, all stemming from fraudulent accusations by a proven perjurer and alienator) to which I and children were anxiously waiting. McFarland refused to hear the Urgent Order to Show Cause, and instead scheduled it several weeks into the future.

123. In doing so, McFarland deliberately and intentionally violated another black letter statute – not a surprise given her disdain even toward prohibitions governing her conduct and her political donations, as described in the introductory chapter above – CPLR §2219 (a), which mandates as follows: "An **order determining a motion relating to a provisional remedy shall be made within twenty days**".

124. Of note: New York State Unified Court System has the ability to track jurists who violate statutory deadlines: see Chief Judge DiFiore's praising creation of the daily dashboard reports and "benchmarks for timely resolutions."[11] This can be also seen from disciplinary verdicts addressing judges' delaying decisions **in small claims** (including the methodology of issuing confidential letters of caution for failing to render decisions in a timely manner and failing to report delayed cases) – but when McFarland delayed resolutions of Urgent Orders to Show Cause submitted by Plaintiff, and scheduled the **case with incessantly alienated children** in gaps of weeks in a row

---

[11] https://ww2.nycourts.gov/sites/default/files/document/files/2018-11/SOJ-2017.pdf (page 4, paragraphs 4-5).

(10/29/2021, 12/7/2021, 1/7/2022, 3/18/2022, 5/15/2022) – nobody within the convoluted supervising structure cared. This clearly shows where the system's priorities lie.

125. I had no choice but to file, on Thursday, October 7, 2021 another complaint into this court: *21-cv-5626 Brik v. McFarland* (which should be part of this Honorable Court's easily accessible records). I has no doubt that McFarland's animosity toward me and plans to retaliate only increased after I exercised his right in an attempt to prevent additional long separation from the actively alienated children.

126. Soon after I submitted the federal action, CFS suddenly notified me – surprise, surprise! – that the visits will be resumed. Acting, as always, out of respect and practicality, I voluntarily withdrew the complaint as the immediately desired result was achieved.

127. McFarland did not change her ways, and continued to violate the law and torture the Plaintiff and the children. Session after session, like Byun and DeLizzo before her, she refused to hear motions to reconsider, in violation of due process, crystal-clear law and precedent quoted above.

128. In ever-present furthering of government far-reaching goals, thankfully awakening, through "COVID-19" propaganda, millions to the suffocating tyranny, censorships, 24/7 endless indoctrination and hypocrisy ("my body my choice" - but not when it comes to mandated masking and "vaccination"), McFarland refused to enforce the governing parenting plan, and allowed Stroutsovsky to inject our children with an experimental substance, which caused yet undetermined numbers of deaths in the U.S. and worldwide.

129. Even New York Court of Appeals judge, Jenny Rivera, refused to inject herself [12] with the unknown liquid manufactured by pharma companies with endless history of fraud, deception,

---

[12] https://nypost.com/2021/10/04/this-unvaxxed-ny-judge-is-now-barred-from-entering-the-courthouse/

and lying to regulators, doctors, and the public – yet McFarland saw no problem that the children will be injected. I hope and pray to G-d that they received placebo, but McFarland's disdain not only toward children's emotional, but toward their bodily autonomy, their actual physical health subjected by the alienator to a woefully unnecessary risk (unlike Stroutsovsky, vast majority of smarter U.S. parents rejected the child injections[13], even according to government propaganda) – cannot be forgotten. Based on all the observations above, it is clear to me that McFarland could not care less if children were hurt, physically of psychologically.

130. Shockingly, McFarland simply refused to calendar my Order to Show Cause to lift the supervising restrictions, submitted on December 30, 2021 and issued some sort of hidden internal note, instead of a decision. I learned about this only through verbal communication with one of court clerks, and was forced to resubmit the motion again on January 5, 2022.

131. Not surprisingly, when it was the alienator Stroutsovsky and her assigned attorney, Berliner, who submitted a non-urgent motion related to passports which already expired – it was rapidly calendared within a couple days, on 2/14/2022. The transcript will show how McFarland treated that hearing: as a private dialogue between her and Berliner, not bothering even to hear what the Plaintiff has to say almost until the end of it.

132. In the above episode, McFarland also completely ignored Berliner's fraudulent declaration of service, despite Plaintiff's bringing the irrefutable facts to her attention in writing and during the hearing.

133. Session after session, McFarland repeatedly, with a cynical grin, demanded me to "work on relationship" with his children, in an ungodly chorus with Kaufman, another key alienation-abettor as described above, who demanded, in Chinese post cultural revolution style, that Plaintiff

---

[13] https://www.cnn.com/2022/05/04/health/kff-vaccine-monitor-survey/index.html

apologize – apologize for what? For an imaginary "crime" concocted by the alienator Stroutsovsky, and later amplified by her band of state-sponsored "protectors" – Berliner, Kaufman, Byun, DeLizzo, and McFarland? Apologize for yet another false allegation by a vindictive, motivated, proven perjurer – allegation from which the Plaintiff was indeed fully cleared, after somebody else – not a single of the three Richmond County judges, not the Appellate Division judges, not the Court of Appeals judges, and of course no their corrupt lackeys, fearful of losing the nepotistic assignments – cared to look into the facts?

134. The similarities to communist methodology employed by McFarland – in her Jesuit demands to "work on relationships" broken by the alienator, and to apologize for a concocted accusation – are striking.

### *The Making of Pavlik Morozov – In New York City*

135. Shifting briefly to first-person narrative: it is clear to any intellectually honest observer that America has being undergoing a communist/totalitarian subversion, the last mile of Gramsci's "long march through institutions", which obliterated most, if not all, fundamental constitutional protections against tyranny – and which just recently, with the "vaccine" mandates for something that presents no real risk for absolute majority of population, and the widespread government-pumped mass-hysteria, deafening propaganda, and brazen censorship, is entering its terminal stage, as is already obvious to hundreds of millions.

136. As stated above, it is my duty, as a father, a Jew, and a Soviet-born descendent of a family who has been decimated by both Stalin's and Hitler's godless regimes, to use the still available formal legal avenues, and to document the endless abuses against my children and me until such time, which I believe won't be long, when Rule of Law will be restored and those responsible for tormenting children and parents will face true, and not subverted, justice.

137. One of the foundational myths of the Soviet communist regime, which I vividly remember from the time I was my daughter's age, attending that regime's indoctrination camp, similarly deceitfully named "public school", was the story of Pavlik Morozov: a child who called the communist government on his own father for the crime of concealing food for his family. The story of Soviet martyr forged by Stalin's propaganda had aimed to achieve the exact same goal desired by all tyrants and ruling classes throughout history: sever family bonds, divide and conquer, pit the slaves against each other: women against men, children against parents, daughters against fathers.

138. A variation on the same communist theme was common also in Maoist China during the "cultural revolution": during public "struggle sessions", those who didn't immediately bow to the regime's dictates, faced extensive public humiliation ceremonies, in which they were forced to confess to various crimes, as far as the imagination of their torturers reached.

139. As I wrote in one of my many motions to McFarland from January 5, 2022, during December 7, 2021 McFarland remarked that the supervision restriction cannot be lifted until some sort of face-off between me and my children takes place in order to "repair" the relationship.

140. This is what I wrote then, even before being fully vindicated by other government players who had at least some integrity left, and who cared, unlike McFarland, to look at the evidence:

> "Am I expected to interrogate my daughter and my son, and cross-examine them on the contradictions and the inconsistencies in the story? Are 10-year girl and 8-year boy expected by the Court to take the function of prosecutors and accuse their own father in the presence of a random social worker (we had four (4) so-far, courtesy of CFS) – a forced exchange in a suffocating, prison-like room, which is not allowed by CFS (and CFS knows exactly why: so they can twist and turn their "reports" according to their "subjective" "impression", with zero ability to contest it and endanger the court-sponsored gravy train of referrals) to be recorded or videotaped? Is the idea to provoke me into telling my children the truth – that they are manipulated by their mother, a documented liar and perjurer – only to "nail me" immediately, gleefully proclaiming: "Aha! You are not allowed to tarnish the

36

mother!" How long the mother's plainly evident motives and past of endless lies will be ignored by the Court and so-called "therapeutic" social workers?

Nothing in this hypocritical, deeply immoral, expectation is normal: it is clearly nothing more than a classical provocation, in which the well-oiled government machine of alienating children from parents has become so proficient in the decades it has been operating. I will not fall for it. I will not bow to tyranny and any of this shameless deceit. Nothing will change even if the supervision unlawfully continues for 20 more years (which it will not anyway – this regime of covert terror of normal people is coming to its end, and it will fall exactly as it's ideological precursor, the Soviet empire of lies), and no amount of de-facto coercion and pain-inflicting isolation from my children will change it. **History teaches those willing to learn that appeasing tyrants and liars never works, and there is no point to play in a rigged game.**

The statement mentioned above is so problematic, to put it mildly, because it presupposes that I am guilty of something, and that I need to fix something broken. This preconception is not only deeply saddening, it is false.

My relationship with my children is excellent. This is a matter of judicial finding by the Seattle Family Court, quoted – and so far ignored – innumerous times in my pleadings before this Court. The only person who has never ceased to try and ruin the relationship is the mother. Like countless other alienators, she is driven by narcissistic vengeance since I dared to expose her true nature by daring to walk away from a horrible marriage and initiating the separation, and by her insatiable greed and fear of losing her lucrative source of income – support money, through which she so far received hundreds of thousands of dollars.

If I committed a crime against my children, as Mr. Berliner vehemently and, of course, unethically accused me – where is the indictment? Where is my due process? Where is the jury of my peers? Where is the impartial tribunal which can also acquit me based on a concrete indictment? How shameful it is that the mighty government, knowing the pitiful weakness of its arguments, cannot scrap enough morsels for an indictment, and instead is hiding behind a fragile back of a ten-year-old girl, expecting her to prosecute her father in a "therapeutic" setting – a small child mortally fearful to also lose the other parent and be hauled to foster care and disappear there, like thousands of other children of ACS-targeted parents, and thus willing to do whatever she is told by the mother in order to stay in the good graces as of the gatekeeper, as the parental alienation research abundantly documents?

This is despicable. Let's at least stop pretending: I am punished for the crime of not bowing down to the tyranny of my ex. **If a crime was committed – please indict me and let me defend myself in a proper forum, with proper constitutional protections. If you cannot indict me – leave me and my children alone.**

None of the involved parties, not even ACS, recommended any separation. What is going on – where is the law that allows the Honorable Court, based on a smear instigated by a vengeful "hell knows no fury", to punish a father by a year of seeing his children for one hour in two weeks (when visits are not skipped) – less than 0.3% percent (less than one-third of a percent!) of time?

Where is the law that allows the Court to violate a fundamental freedom of association with my own children in prior restraint?

Where is the law that allows the Court to do so without a hearing and as little as an opportunity to cross-investigate the complaint-maker, the mother? Even those accused of real crimes in real criminal court are released on bail to prevent irreparable harm to their freedoms – but fathers like me are treated worse than indicted criminals!

Where is the law that allows judges to not give any reasons for such life-altering decision? Where is the law that allows the Court to repeatedly ignore the mother's documented history of lies, including to this very Court, in written and sworn declaration? How can I – or the public paying the salary of the judges – even know that the Court reads my pleadings, if no arguments are given and no analysis of evidence and claims is presented?

Is this a first-world country legal system? I was admitted to the bar in Israel, as the mother repeatedly reminds me – but never in my past career as a lawyer I saw such rampant, prevalent disdain toward litigants – not even bothering to attempt to deal with their arguments or facts, just cutting and pasting, over and over, the same "Order" templates?!

Where is the law that allows not letting an accused American to get a copy of the accusatory documents – and still proceed with shameless violations of his and his children's G-d given rights?

None of those involved – not even ACS, and certainly not my children, in the name of whom, insidiously and hypocritically, this unabashed injustice is perpetrated – have even asked for any separation – yet it continues for almost a year!

**It is time to stop this torture <u>immediately</u>. It is time to uphold the Rule of Law, the Constitution, and decades of case law defining fundamental rights and guaranteeing due process.**

**The communist agenda and similarities behind this insane tormenting of fathers and children is getting too obvious, and We The People across the nation are taking notice.**

To sum up: I will not confess to a crime I did not commit. I will not step into the trap of accusing the mother of my children of manipulating them, in front of the

children and the Court's long arm, CFS – although it is true, and I will make sure that it will be eventually judicially recognized, whether through this Court, through the federal courts, or the Supreme Court of the United States.

I will not damage my children's psyche by cross-investigating them in front of a foreigner, a random social worker with zero education or interest in parental alienation, when recording or protocol-taking is deliberately prevented".

141. What was McFarland's reaction to my desperate appeals if not to law, which clearly means nothing to judge-activist like her, but to history and basic human decency, begging to stop tormenting me and the children, pitting us against each other in a Gestapo-like environment of constant spying and ominous hovering presence of another money-dependent court-servant, CFS social worker?

142. Her reaction was as follows: not docketing properly submitted motion, and gagging me from bringing further motions for reconsideration, stating that she will blankly refuse them, in another blatant – as if McFarland cares – violation of First Amendment Right to Petition.

143. McFarland didn't stop there.

144. This childless single woman, a life-long political activist for a party advocating for child sacrifice by cutting them alive in the womb, senior executive in organizations promoting divisive, her-own sex centered ideology, who openly broke statutes prohibiting judges to pay politicians, yet claiming to have the moral authority to order New Yorkers around, had the nerve of telling me, a father of two children fighting the insane machinery of organized oppression, what is and what isn't appropriate to do with my children even under CFS supervision!

145. Being petty, delusional tyrant that she is, clearly thinking that she will remain above the law forever, McFarland forbade me from playing a game of hide and seek around the dull CFS room (hiding small bills for the children to find in a game of "hot" or "cold").

146. McFarland didn't stop there.

147. She reversed DeLizzo's order allowing the children and me to spend time outside, and once again confined us to a stifling room in CFS' appalling office. It is clear as day that she has been doing all that intentionally: making the "visitations" as unpleasant and chore-like as possible for the children hastens the arrival of the point at which they might say that they don't want to see their father anymore.

148. This is exactly what McFarland and the system that not only tolerated, but promotes and protects her so far, would want. But this is not what We The People want. I have zero doubt that once McFarland's behavior is exposed to a jury of my fellow Americans, the people will make their will known in a scathing verdict, which, hopefully, will save thousands of innocent souls at risk every new day McFarland remains on the bench.

*__April 18, 2022 Hearing__*

149. After McFarland decided to ignore not only facts, arguments, and law, as she did so far, **but even a decision by another judge (Harris), who fully cleared me of all accusations** by the alienator Stroutsovsky, I had no choice but to ask for McFarland's recusal for the second time.

150. Per the established routine, McFarland used even the motion for recusal as a pretense to drag the case and promote the alienation: **she didn't even bother to ask Berliner or Kaufman as to their position on the motion, and manipulatively claimed that she needs time to decide.**

151. McFarland has taken several weeks to decide a simple, clear-cut motion, again manipulatively claiming that it was long – when, in fact, it consisted of two pages with exhibits previously submitted to McFarland.

152. Moreover, as confirmed by no less than five court-watchers who were present during the conference, McFarland repeatedly, without warning, physically – not metaphorically – silenced the Plaintiff by muting his microphone!

153. Conversely, McFarland let the alienator Stroutsovsky speak at length, despite her being represented by Berliner, in a tale-telling deviation from the usual "you have an attorney", demonstrating, in the $n^{th}$ time, the ingrained discrimination of preferred/targeted parent designation in McFarland's courtroom.

154. It is abundantly transparent that McFarland didn't need several weeks to decide whether to recuse herself, especially when the attorneys, Kaufman and Berliner, didn't ask to provide – **nor provided, to this day!** – any position as to recusal motion, as they didn't need to prepare one.

155. It is abundantly clear to all involved that both Kaufman and Berliner are simply accessory players in the elaborate, despicable Kabuki theater orchestrated by McFarland, in which the drama is supposed to end with child's alienation.

156. McFarland also did not need to wait for another hearing – she could have issued a written decision.

157. McFarland, or her staff, signed and emailed the adjournment order at 13:04, minutes after the Teams call ended – clearly indicating that she prepared the order in advance.

158. McFarland took the time in order to consult with her enablers inside the system, and "to gauge the temperature" – to see if this time as well she will be provided "protection" despite increasingly exposed and evident violations of all imaginable due process redlines, not to mention her outright corruption in publicly sponsoring politicians while on the bench.

159. Clearly, based on the documented train of abuses above, McFarland will not make any facts, laws, precedents, arguments – any information at all – affect her. She is an ideologue, brute-forcing her worldview from the bench on her "subjects", and she will charge toward her ideological goals.

160. As a G-d fearing father, it is clear to me that McFarland is, alike, an older victim of indoctrination, most certainly false feminist ideology that tricked her to into wasting her life on worshipping false idols of career and fleeting political connections, which will betray her as quickly as they betrayed Alexis Marquez – instead of having family and children, and promoting life and love, instead of serving the goals of those who are hell-bent on destroying it.

161. However, given the enormity of damage McFarland has been causing to Plaintiff's children, Marta Bryceland's daughter, Marcello Roque's daughter, John Kempf's son – and thousands of others who are still too intimidated or devastated to stand up to this abject tyranny and torture, there is no place for misguided compassion.

162. Yes, McFarland is a victim of the same ideology she is promoting, but she is a grown woman, and she is an abuse-abettor who, under color of law, ignores the law and uses her gavel to bludgeon innocent children and parents into despair and endless suffering. She needs to be held accountable for all she's done, and this Honorable Court should - and the jury to be assembled will – make sure that it happens.

## MCFARLAND'S PATTERN OF CONSTITUTIONAL VIOLATIONS – 
## MORE PARENTS SPEAKING OUT AND DOCUMENTING JUDICIAL ABUSE

163. The events described above are not isolated incidents. As documented also in Bryceland's amended complaint, McFarland has established a pattern of routinely and cavalierly trampling elementary constitutional protections, ignoring and denying evidence of child abuse, including emotional and psychological abuse through parental alienation, suspending and revoking parenting time on a whim, and an endless array of other violations.

164. Statements of additional Staten Island parents, John Kemp and Marcello Roque, who are similar victims of McFarland's outrageous, arrogantly delusional contempt toward due process,

law, and the U.S. Constitution – confirm that these atrocities will continue irreparably harming countless New York parents and children unless this Court draws the line in the sand.

165. To sum up: defendant McFarland, as stated hereafter, committed innumerous acts of malicious, blatant constitutional violations of my and my children's fundamental freedoms, warring against the U.S. Constitution and abusing any plausible deniability of judicial discretion, shedding any judicial capacity.

166. In so shedding, McFarland is not entitled to any judicial immunity: see, e.g., the action recently settled by the government in another 42 U.S.C. §1983 case – against Cheryl Joseph, another New York judge who violated the First Amendment rights of a New Yorker in court: *18-cv-2909 Jacob v. Cosimo Ali and Judge Cheryl Joseph.*

167. This is also the place to clarify that the mantra of judicial immunity does not protect defendants like McFarland from declaratory, or, if it is unavailable, from injunctive relief: this is the explicit language of 42 U.S.C. §1983.

168. See also 42 U.S. Code §1988, specifically mentioning "any **action brought against a judicial officer** for an act or omission taken in such officer's judicial capacity", and the following carve-out: "such officer shall not be held liable for any costs, including attorney's fees, **unless such action was clearly in excess of such officer's jurisdiction**."

169. The statute couldn't be clearer: (a) an action against a judicial officer can indeed be brought, (b) a determination can be made that such judicial officer committed action which was clearly in excess of such officer's jurisdiction, and (c) such judicial officer can even be held liable for costs, including attorney's fees.

170. Ignoring crystal-clear legislative intent of allowing Americans to sue judicial officers in federal courts and seek jury determination that, for example, a judicial officer clearly in excess of

such officer's jurisdiction and thus is liable for costs and attorney's fees, by a-priori declaration, contradicting black-letter law, that judges are immune – would constitute blatant legislation from the bench in violation of the constitutional principle of separation of powers, amounting to sabotaging the will of We The People by subjects of this very legislation.

171. To put it simply: if there are some members of the same judicial cohort, federal or state level share the same camaraderie and power of making rulings affecting lives of thousands of Americans, who were explicitly subjected by U.S. Congress in 42 U.S. Code provisions to public scrutiny, are emptying the statutes from all content and deny access to federal juries and adjudication of their suits upfront, without even allowing a panel of impartial Americans to determine, e.g., whether a sued judge committed "action was clearly in excess of such officer's jurisdiction" (the suit doesn't have to be for this determination, this is only an example of one of many possible outcomes of a jury trial, needed specifically to impose also costs and attorney fees on a respondent judge) – this only further proves that this complaint, and the respectful demand for a jury trial, are absolutely necessary to publicly expose, hold accountable, and weed out those members of the judiciary who think and act as if they are untouchable rulers, protecting their colleague and class of rulers, who are above the law.

172. And indeed, this is the black-letter law as summarized by the federal courts

> "[B]ecause Appellant did not ask for damages, judicial immunity protects Defendants in this case only to the extent Appellant requests injunctive relief. ... Because Appellant **specifically requests declarative relief**, judicial immunity protects the Defendants only from Appellant's request for injunctive relief. **§1983 does not explicitly bar Appellant's request for declarative relief.**" (See, e.g., *Esensoy v. McMillan* (05-01063-CV-W-N), FN5).

173. To sum up: **We The People, through U.S. Congress, have explicitly created a mechanism to make even judges accountable. American revolution was fought and won**

**against previous iteration of enslavement by untouchable royalty, precisely to prevent subjugation of free people by an unaccountable ruling class.**

174. Beyond all that, neither McFarland, nor the Unified Court System deserve any assumption of propriety or acting benevolently: the sheer number of scandals, crimes and forced resignations just in the recent period is staggering. At what point the flood of the "exceptions" getting exposed to the public will be seen for what they are: the actual norm, a tip of the iceberg of the festering favoritism, lawlessness, inaptitude and brute-force manufacturing of godless, ideological outcomes through fully subverted and corrupted "judicial" system?

(a)    Ex-judge **Sylvia Ash**, from the New York Supreme Court, was sentenced on April 20, 2022 to a year and three months in prison after her conviction for obstructing a probe into financial wrongdoing at a credit union that provides banking services to tens of thousands of New York City employees, including police and firefighters.[14]

It is important to note that Ash received tens of thousands of dollars in reimbursements and other benefits from 2012 through 2016, including airfare, hotels and entertainment, along with annual birthday parties at a minor league baseball stadium and payment for phone, cable bills and electronic devices. Ash was required to report gifts and benefits from any outside sources on an annual state disclosure form, but prosecutors said she never reported gifts or benefits from the credit union between 2012 and 2018.

The Plaintiff, along with a group of other court victims, requested these forms for Richmond County Family Court and four other New York City family courts – and, unsurprisingly, was ignored.

---

[14] https://news.yahoo.com/convicted-ny-state-judge-gets-214321528.html

Do McFarland, DeLizzo, Sacco, Byun and others have something to hide? Appeal on the trademark stonewalling is pending.

(b)    On April 5, judge **John Michalski** from Erie County succeeded in killing himself after the second reported attempt, less than two weeks after his home was raided by FBI.[15] Michalski has been eyed by FBI for years, and was questioned about his friendship with Peter Gerace Jr., the owner of a strip club in Cheektowaga, and a former client. Gerace was charged with sex trafficking, drug distribution and bribery of a former Drug Enforcement Administration agent, Joseph Bongiovanni, who has been charged with bribery, obstruction and conspiracy. The indictment detailed both defendant's connections to **Italian mafia** – clearly not an association the Unified Court System is happy is out there in the public space, especially in the light of Marquez's descriptions in her federal complaint, quoted above, which suspiciously depict exactly mafia-like organizational "culture" of silencing, intimidation, leaving no paper trail, and funneling collected money via lucrative appointments to those whom the higher-ups hold dear.

(c)    See also, in this context, *Klymn v. Monroe County Supreme Court et al (6:21-cv-06488)*, submitted in June 2021, currently pending in the District Court for the Western District of New York, which documents judge Matthew Rosenbaum's outrageous sexual acts, which were repeatedly ignored by the same individuals still in place to this very day.[16]

[15] https://nypost.com/2022/04/06/ny-judge-john-michalski-kills-himself-weeks-after-authorities-raided-his-home/
[16] https://www.rochesterfirst.com/news/local-news/former-local-judge-matthew-rosenbaum-denies-rape-allegations-totally-consensual/

(d)    In 2021, a record number of New York judges under investigation for ethics violations publicly resigned.[17] **23 (twenty three!) judges resigned while under scrutiny**, of which 13 signed a stipulation to never return to avoid formal removal.

(e)    Another recent report exposed that, over the past decade, many New York judges, **including three on the state's highest court and top court administrators**, didn't publicly report outside compensation and gifts over $150 to their clerks, violating the ethics rule (22 NYCRR §100.4) which safeguards against financial conflicts of interest and corruption.[18] Remarkably, in New York City just 5 judges out of about 500 have filed a total of nine reports in the past decade.

And indeed, as mentioned, New York City Family Courts have been stonewalling similar requests submitted by Plaintiff's and other members of the public.

175. To conclude this point: the unbelievably sordid state in which New York State Unified Court System finds itself, based on the examples above, along with federal actions brought even by insiders like Marquez and Klymn, are a clear testament to woefully insufficient public scrutiny and oversight – which, again, leads to appointment and unabridged reign of corrupt tyrants like McFarland, who openly and brazenly flaunts her illegal sponsoring of her political fellow-travelers, knowing that this behavior will face no public repercussions.

176. This Honorable Court, and the jury to be seated by it, must unravel this web of corruption and disdain toward Americans and American Constitution, and stop the institutionalized separation, orphanization and psychological abuse of children in the despicable, multi-layered mechanism of reciprocal evasion of accountability described above.

## FIRST CLAIM FOR RELIEF – VIOLATION
## OF PLAINTIFF'S FIRST AMENDMENT RIGHTS UNDER 42 U.S.C. §1983

[17] https://www.law360.com/pulse/articles/1470074/ny-judges-cut-public-resignation-deals-in-record-numbers
[18] https://www.law360.com/articles/1473714/ny-judges-ignored-income-gift-reporting-rule-for-years

(Freedom of Speech/Freedom to Petition/Prior Restraint)

177. Plaintiff repeats the foregoing stated paragraphs as if fully set forth herein.

178. Plaintiff engaged in constitutionally protected speech when he pleaded, orally and in writing, in front of Defendant McFarland, and his appeals and complaints, and in front of this Honorable Court.

179. Defendant McFarland, upon hearing the Plaintiff, seeing his submitted pleadings, and (assumingly) reading some of them, became enraged, incensed, and deeply offended by Plaintiff's exercising his freedom and vehemently objecting to the way McFarland has been treating the Plaintiff, his children, the law, and Defendant's own obligations and oath. McFarland abhorred the continued exposing of her blatant ineptitude, favoritism, questionable legal knowledge and skills, and outright corruption, culminating in bringing to light of her illegal political donations to her appointer and other members of the same ideological cadre de-facto promoting America's subversion and destruction from within the country's core institutions.

180. In retaliation, Defendant McFarland has embarked on the described path to silence, oppress, and punish Plaintiff by using every pretense to further tarnish the Plaintiff and separate him from his children, on 2/24/2023 unleashing also officer Lavanco to attack the Plaintiff.

181. In furtherance of her unlawful goal of silencing Plaintiff, McFarland ignored Plaintiff's submissions and pleading, culminating in unlawful de-facto gag order prohibiting Plaintiff from filing additional motions to the court as described above.

182. As a result of the foregoing, Defendant McFarland prevented Plaintiff from reuniting with his children **for months and months in a row**, causing irreparable emotional and psychological damage through alienation.

183. Defendant McFarland's unlawful actions have had profound chilling and damaging effect on Plaintiff.

184. As a result of the foregoing acts, McFarland violated – and, given the evidence submitted by other McFarland's victims, most likely continues to violate day in and day out, the Freedom to Petition Clause of the First Amendment, which is incorporated and made applicable to the States by the Fourteenth Amendment of the Constitution of the United States, by categorically and specifically targeting the Plaintiff, and other parents similarly situated, by refusing Plaintiff access to plea for justice, without cause or justification, without ground in law, without argumentation, and in violation of the First Amendment of the Constitution of the United States.

## SECOND CLAIM FOR RELIEF
## VIOLATION OF PLAINTIFF'S DUE PROCESS RIGHTS UNDER 42 U.S.C. §1983
(Substantive and Procedural Due Process, Equal Protection of Laws)

185. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs above with the same force and effect as if fully set forth herein.

186. Defendant McFarland repeated acts of, inter alia, silencing Plaintiff, ignoring evidence, refusing to hold a proper hearing to continue separating Plaintiff from his children, refusing to review Plaintiff's motions, denying Plaintiff's right to submit additional motions, refusing to hold both Berliner and Kaufman for ethical violations presented to her, were objectively vindictive, punitive, capricious, tyrannical, and unreasonable.

187. The described acts were committed by McFarland in violation of Plaintiff's constitutional rights, depriving him of fundamental rights without due process.

188. As a result of the foregoing, Plaintiff sustained, inter alia, loss of liberty, loss of affection of his children, grave emotional distress, embarrassment and humiliation, and deprivation of his constitutional rights.

## THIRD CLAIM FOR RELIEF
## VIOLATION OF CHILD-PARENT FREEDOMS UNDER 42 U.S.C. §1983
## AND N.Y. STATE LAW

189. Plaintiff reiterates and realleges each and every allegation contained in the paragraphs above as if the same were more fully set forth at length herein.

190. Black-letter law and decades of established precedent protect Plaintiff's and his children's freedoms, given to him by G-d and not by any government. This is the "fundamental principle", as summarized by New York appellate court in *Matter of Elizabeth C. (Omar C.),* 2017 NY Slip Op 08370 (156 AD3d 193), "that, with limited exceptions, **"[a] parent has a 'right' to rear [his or her] child, and the child has a 'right' to be reared by [his or her] parent"** (*Matter of Bennett v. Jeffreys*, 40 NY2d 543, 546 (1976); see *Santosky v. Kramer*, 455 US 745, 753-754 [1982]; *Rankel v. County of Westchester*, 135 AD3d 731, 733 (2016) ["parents have a liberty interest in the care and custody of their children, and children have a parallel liberty interest in not being dislocated from their family"])."

191. These are **"reciprocal, constitutionally protected liberty interests in " 'the emotional attachments that derive from the intimacy of daily family association' "** (*Southerland v. City of New York*, 680 F3d 127, 142 (2d Cir 2012), quoting *Kia P. v. McIntyre*, 235 US 749, 759 (2d Cir 2000))".

192. "The rights of parents to the care, custody and nurture of their children is of such character that it cannot be denied without violating those fundamental principles of liberty and justice which lie at the base of all our civil and political institutions, **and such right is a fundamental right protected by this amendment (first) and Amendments 5, 9, and 14.**" *Doe v. Irwin*, 441 F Supp 1247; U.S. D.C. of Michigan (1985).

193. A parent's right to "the companionship, care, custody and management of his or her children" is an interest "far more precious" than any property right. *May v. Anderson,* 345 U.S. 528, 533 (1952). Moreover, U.S. Supreme Court implied that "a (once) married father who is separated or divorced from a mother and is no longer living with his child" could not constitutionally be treated differently from a currently married father living with his child. *Quilloin v. Walcott,* 98 S.Ct. 549; 434 U.S. 246, 255-56 (1978).

194. "The Due Process Clause of the Fourteenth Amendment requires that severance in the parent-child relationship caused by the state occur only with rigorous protections for individual liberty interests at stake." *Bell v. City of Milwaukee,* 746 F 2d 1205: U.S. Ct. App. 7th Cir. WI., (1984).

195. "No bond is more precious and none should be more zealously protected by the law as the bond between parent and child." *Carson v. Elrod,* 411 F Supp 645, 649; DC E.D. VA (1976).

196. "A parent's right to the preservation of his relationship with his child derives from the fact that the parent's achievement of a rich and rewarding life is likely to depend significantly on his ability to participate in the rearing of his children." *Franz v. U.S.,* 707 F 2d 582, 595-599; US Ct App (1983).

197. "State judges, as well as federal, have the responsibility to respect and protect persons from violations of federal constitutional rights." *Gross v. State of Illinois* 312 F 2d 257 (1963).

198. As a result of Defendant's aforementioned conduct, Plaintiff was, and still is, subjected to an illegal, abusive, immensely damaging, state-sponsored alienation and isolation from his own children, the life-long effects of which on both him and the children are impossible to fathom.

## FOURTH CLAIM OF RELIEF
## CONSPIRACY TO VIOLATE PLAINTIFF'S RIGHTS UNDER 42 U.S.C. § 1983

199. Plaintiff reiterates and realleges each and every allegation stated above as if the same were more fully set forth at length herein.

200. Defendant McFarland conspired and acted in concert with Kaufman and Berliner, and other yet unknown co-conspirators and enablers, without whose support McFarland would not dare to act with such disdain, arrogance and sense of entitlement and impunity, and to do whatever she deemed necessary, lawful or not, in order to deprive Plaintiff of his lawful rights under the First Amendment to petition the government, to submit legally permitted pleadings and make oral statements, to speak freely and openly about McFarland and her despicable treatment of the Defendant, and to make critical and even negative comments about McFarland's conduct and abuses of power.

201. Defendant similarly conspired to deprive Plaintiff from his right to due process, right to equal protection of laws, freedom of association and freedom to enjoy the company of his children and their reciprocal freedom to enjoy the company of their father, as stated heretofore.

202. Throughout the period of the conspiracy, Defendant McFarland pursued her long documented, public ideological objectives with actual malice toward Plaintiff, with utter and deliberate indifference to and disregard for Plaintiff's rights under the Constitution and laws of the United States, in blatant violation of governing law and precedent, without cause or justification.

203. Pursuant to the conspiracy, Defendant McFarland, aided and encouraged by her co-conspirators, deliberately and intentionally: i) denied Plaintiff's right to be protected from Berliner's and Kaufman's unethical behavior, ii) conferred ex parte and in secrecy without Plaintiff's consent or knowledge with yet unknown co-conspirators to gauge the level of system's protection of her unlawful conduct; iii) consistently acted to facilitate deterioration of and deprive Plaintiff from enjoying the constitutionally protected freedom of association with his own children;

iv) manufactured false reasons, ex post facto, for having done so, so as to conceal the true reasons for her unlawful actions; v) weaponized the judicial process to retaliate against a courageous parent standing up to the judicial abuse and exposing it; vi) used intimidating, defamatory, insinuating language against Plaintiff in order to threaten, harass and intimidate him, to punish him through isolation from his children, and to deter Plaintiff from seeking redress for Defendant's unlawful acts.

204. The aforesaid conduct of Defendant operated to deprive Plaintiff of important and well-established rights under the Constitution and the laws of the United States including, but not limited to:

(a) Freedom of Speech under the First Amendment to the United States Constitution;

(b) Freedom to Petition the government under the First Amendment to the United States Constitution;

(c) Freedom from retaliation for protected speech under the First Amendment to the United States Constitution;

(d) Freedom from Prior Restraint of Speech under the First Amendment to the United States Constitution;

(e) Freedom from deprivation of fundamental rights without Due Process;

(f) Freedom to associate with and raise one's own children, and to enjoy their society;

205. As a result of the foregoing, Plaintiff's First, Fifth, Ninth, and Fourteenth Amendment rights were violated by Defendant McFarland, and Defendant Lavanco during the 2/24/2023 event, he was denied fundamental constitutional rights, he was publicly embarrassed and humiliated, he was caused to suffer severe emotional distress, injury and anxiety.

**FIFTH CLAIM FOR RELIEF UNDER N.Y. STATE LAW**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

206. Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs above with the same force and effect as if fully set forth herein.

207. The aforementioned conduct was extreme and outrageous, and exceeded all reasonable bounds of decency.

208. The aforementioned conduct was intentional and done for the purpose of causing severe emotional distress to Plaintiff, out of vindictiveness and McFarland's "drunkenness" of unchecked, unchallenged power and delusion of impunity and protection by her co-conspirators.

209. As a result of the aforementioned conduct, Plaintiff suffered severe emotional distress, physical and mental injury, together with embarrassment, humiliation, shock, fright and loss of freedoms.

**WHEREFORE**, Plaintiff Brik demands judgment as follows:

a. For a declaratory judgment declaring that the aforementioned actions of Defendant McFarland and Defendant Lavanco were unlawful and a violation of Plaintiff's First Amendment rights;

b. For a declaratory judgment declaring that the actions of Defendant McFarland, in barring Plaintiff from obtaining redress through submitting additional motions, were unlawful and a violation of his First Amendment rights;

c. For a declaratory judgment declaring that the aforementioned actions of Defendant McFarland, were unlawful and a violation of Plaintiff's and his children's fundamental rights, including, but not limited to, the right to Due Process, Equal Protection, and the reciprocal, G-d given freedom to enjoy the society of his children without constant interference by the government and government-enabled actors, and that such actions by

Defendant amounted to state-sponsored and abetted alienation and psychological child abuse;

d. If the Court determines that, for any reason, the foregoing Declaratory relief cannot be granted, then Plaintiff also seeks injunctive relief enjoining Defendant McFarland from: i) retaliating against Plaintiff; ii) interfering with Plaintiff's First Amendment Freedom of Speech and Freedom to Petition, directly and indirectly, and tampering with Plaintiff's access to and freedom to petition the Courts of New York State, including Richmond County Family Court; iii) violating his fundamental reciprocal freedoms of association and enjoyment of the company of his children; iv) violating the fundamental reciprocal rights and freedoms of other parents and children; v) given that McFarland's conduct shows that she doesn't think the rules apply to her, specifically enjoin McFarland from continuing to sponsor her political favorites in violation of 22 NYCRR §§ 100.1, 100.2(A) and 100.5(A)(l)(h).

e. For reasonable litigation costs and fees, if applicable;

f. Such other and further relief as the Court deems just.

Respectfully submitted and signed on: May 5, 2023

Roman Dp/k
805 Willowbrook Rd
Staten Island, NY 10314
Tel.: (972) 900-1272
Email: brrm972@gmail.com