UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------- X
                                                                :
**ROMAN BRIK**,                                                 :
                                                                :
                     Plaintiff, : **ORDER MODIFYING REPORT**
                                   : **AND RECOMMENDATION**
        – against –                                      :
                                     : 23-CV-3507 (AMD) (LB)
**COURT OFFICER LAVANCO**,                                      :
                                                                :
                     Defendant.                             :
--------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

       On May 6, 2025, then Chief Magistrate Judge Lois Bloom[1] recommended that the Court grant the defendant's motion to dismiss the case for failure to prosecute. Judge Bloom had every reason to make that recommendation. After the plaintiff ignored multiple court orders, Judge Bloom twice warned the plaintiff that she would recommend dismissal. Despite this, the plaintiff did not respond to deadlines or communicate with the Court for nearly four months. Nevertheless, in an excess of caution, the Court reluctantly modifies Judge Bloom's recommendation and gives the plaintiff one final chance to prosecute his case.

## BACKGROUND

       On May 5, 2023, the *pro se* plaintiff brought 42 U.S.C. § 1983 claims and a state law claim for intentional infliction of emotional distress against the defendant and Judge Janet McFarland in connection with Richmond County Family Court proceedings. (ECF No. 1.) On June 29, 2023, the Court dismissed the complaint against Judge McFarland based on judicial immunity and against the defendant for failure to state a claim. (ECF No. 9.) The Court granted

---

[1] Judge Bloom retired in May 2025.

the plaintiff leave to file an amended complaint against the defendant, which the plaintiff did almost seven months later, on January 23, 2024. (ECF No. 14.)[2]

In the amended complaint, the plaintiff alleged violations of his First, Fourth, and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983, as well as New York state law claims for assault, battery, and intentional infliction of emotional distress. (*Id.* at 5–8.) The defendant moved to dismiss all claims, except the First Amendment claim. (ECF No. 20.) On November 4, 2024, the Court granted the defendant's motion in part, permitting the assault, battery, and First Amendment claims to go forward. (ECF No. 31.)

On December 12, 2024, the parties appeared for an initial conference before Judge Bloom, who set a discovery schedule and other litigation deadlines. (*ECF Order dated Dec. 12, 2024.*) As relevant here, Judge Bloom ordered the parties to "file a protective order and exchange authorizations for medical and/or mental health records" by January 21, 2025, to complete discovery by March 28, 2025, and to file a joint status letter by February 14, 2025. (*Id.*)[3] On February 14, 2025, the defendant advised the Court that he had served disclosures and interrogatories and noticed the plaintiff for his deposition, but that the plaintiff had not served initial disclosures or confirmed his availability for the deposition. (ECF No. 43 at 1–2.) Although the plaintiff told the defendant's counsel that he would need an extension of the

---

[2] The plaintiff requested, and the Court granted, three extensions of time to file the amended complaint. (*See* ECF Nos. 10, 12, 13; *ECF Orders dated July 25, Oct. 23, and Dec. 15, 2023*.)

[3] The parties were not able to agree on the contours of a protective order, in part because the plaintiff was "not inclined to allow Court Officer Lavanco's alleged behavior to remain hidden from the public." (ECF No. 35.) Judge Bloom ultimately issued a protective order, observing that "[c]onfidentiality and protective orders are routine in civil rights cases, where, generally, parties will agree not to use discovery materials that are marked confidential for any purpose other than the case being litigated." (ECF No. 42.)

2

discovery timeline (*id.* at 4–5), he did not file a response to the defendant's letter or otherwise communicate with the Court.

On March 13, 2025, the defendant moved to compel the plaintiff to produce discovery (ECF No. 45); the next day, Judge Bloom ordered the plaintiff to respond to the defendant's motion by March 28, 2025 (ECF No. 47). Judge Bloom warned the plaintiff that if he did not respond, the Court would compel him to produce his discovery responses by a date she would determine; if he still did not comply, she would recommend that the Court dismiss his case. (*Id.* at 1.) The plaintiff did not comply or otherwise respond by March 28, 2025.[4] Judge Bloom granted the defendant's motion, and gave the plaintiff until April 17, 2025, to satisfy his discovery obligations. (ECF No. 50.) Judge Bloom again warned the plaintiff that she would recommend that the Court dismiss his case if he ignored the Court's orders. (*Id.* at 2.)

Once again, the plaintiff did not comply with Judge Bloom's order and did not communicate with the Court. On April 18, 2025, the defendant moved to dismiss the complaint pursuant to Federal Rules of Civil Procedure 26(a)(1), 33, 34, and 37. (ECF No. 52.) The Court referred the motion to Judge Bloom. (*ECF Order dated Apr. 18, 2025.*)

Judge Bloom issued a report and recommendation on May 6, 2025, recommending that the Court dismiss the action. (ECF No. 53.) Judge Bloom cited the plaintiff's "repeated[] fail[ure] to comply with Court Orders" or fulfill his discovery obligations. (*Id.* at 5.) Judge Bloom warned him twice that she would recommend that the case be dismissed if he continued

---

[4] On March 21, 2025, the plaintiff emailed defense counsel, stating that he intended to move to disqualify her and that he would consent to an extension of time to complete discovery. (ECF No. 49 at 1.)

3

to ignore Court orders. (*Id.* at 5.)[5] Finally, Judge Bloom determined that the plaintiff's "failure to move his case forward, in violation of the Court's Orders" was "willful." (*Id.*)

On May 23, 2025 — the plaintiff's first communication with the Court since January 31, 2025 — the plaintiff requested an extension of time to June 6, 2025, to file his objections to the report and recommendation, claiming a "disparity of resources and access to justice." (ECF No. 55.) The Court granted the extension. (*ECF Order dated May 23, 2025*.) On June 9, 2025, the plaintiff requested a second extension, again citing the "disparity of resources and access to justice," and that he "had to prepare and file a Motion to Intervene in another case pending in front of" the Court. (ECF No. 57 ¶¶ 3–4.)[6] The Court granted the plaintiff's request "solely because of the plaintiff's *pro se* status, and not for any other reason," and ordered him to file his objections by June 20, 2025. (*ECF Order dated June 9, 2025*.) The plaintiff filed his objections on June 23, 2025. (ECF No. 58.)[7]

## LEGAL STANDARD

A party may object to a magistrate judge's report and recommendation within 14 days. Fed. R. Civ. P. 72(b)(2). Objections are reviewed *de novo* when they are "specific and clearly aimed at particular findings in the magistrate judge's proposal." *Green v. Dep't of Educ. of N.Y.*, No. 18-CV-10817, 2020 WL 5814187, at *2 (S.D.N.Y. Sept. 30, 2020) (quoting *McDonaugh v. Astrue*, 672 F. Supp. 2d 542, 547 (S.D.N.Y. 2009)); *Barratt v. Joie*, No. 96-CV-324, 2002 WL 335014, at *1 (S.D.N.Y. Mar. 4, 2002) ("Parties filing objections to recommendations are

---

[5] Judge Bloom also noted that the defendant had "not heard from the plaintiff since March 21, 2025." (*Id.*)

[6] The plaintiff filed that motion — which contained a 56-page proposed complaint — on May 29, 2025. *Garanin v. New York*, No. 25-CV-1959, ECF No. 21 (E.D.N.Y May 29, 2025). The Court denied the motion. *Id.*, ECF No. 24 (June 13, 2025).

[7] The plaintiff's objections were timely filed pursuant to Federal Rule of Civil Procedure 6(d).

required to 'pinpoint specific portions of the report and recommendations to which [they] objec[t] . . . .'" (alterations in original) (quoting *Camardo v. Gen. Motors Hourly-Rate Emps. Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992))). If "the [objecting] party makes only frivolous, conclusory or general objections, or simply reiterates [the party's] original arguments, the Court reviews the report and recommendation only for clear error." *Velez v. DNF Assocs., LLC*, No. 19-CV-11138, 2020 WL 6946513, at *2 (S.D.N.Y. Nov. 25, 2020) (citation omitted); *see also Colliton v. Donnelly*, No. 07-CV-1922, 2009 WL 2850497, at *1 (S.D.N.Y. Aug. 28, 2009), *aff'd*, 399 F. App'x 619 (2d Cir. 2010) (summary order). "[E]ven in a de novo review of a party's specific objections, [however,] the court will not consider 'arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance.'" *Saada v. Golan*, No. 18-CV-5292, 2023 WL 1993538, at *2 (E.D.N.Y. Feb. 13, 2023) (alterations in original) (citations omitted).

## DISCUSSION

As an initial matter, the plaintiff's objections are neither "specific" nor "clearly aimed at particular findings" in Judge Bloom's report and recommendation. *Green*, 2020 WL 5814187, at *2 (citation omitted). Indeed, the plaintiff does not address the basis for Judge Bloom's well-reasoned determination: that the plaintiff "repeatedly failed to comply with Court Orders." (ECF No. 53 at 5.) Rather, he makes frivolous and factually unsupported claims about Judge Bloom's handling of the case. For example, he objects that Judge Bloom "demonstrated persistent bias and barely-hidden disdain toward [him] as a pro se litigant." (ECF No. 58 ¶ 2.) She did not. He also asserts that Judge Bloom disregarded her local rules by denying him the opportunity to respond to the defendants' motions. (*Id.* ¶¶ 4–5.) Once again, she did not. He cites three instances in which Judge Bloom allegedly denied him an opportunity to respond the defendant's

5

motions: (1) the January 21, 2025 motion for a protective order (ECF No. 35); (2) the March 13, 2025 motion to compel; and (3) the April 18, 2025 motion to dismiss (ECF No. 52). (ECF No. 58 ¶¶ 5–10.)[8] These claims are belied by the record,[9] and, in any event, Judge Bloom's decisions were well-within her "inherent authority to manage [the] docket[] . . . with a view toward the efficient and expedient resolution of [the] case[]." *Dietz v. Bouldin*, 579 U.S. 40, 47 (2016).[10]

Because the plaintiff's arguments are not "clearly aimed at particular findings in the magistrate judge's proposal," the Court reviews Judge Bloom's report and recommendation for clear error, *McDonaugh*, 672 F. Supp. 2d at 547–48, and finds none. However, while the Court

---

[8] The plaintiff also argues that Judge Bloom "repeatedly ignored the brazen ethical violations by" counsel for the defendant, including that she delayed in providing certain video discovery. (*Id.* ¶¶ 12–13.) Counsel for the defendant explains that the plaintiff "has been in possession of the relevant footage since February 18, 2025." (ECF No. 59 at 2.) Regardless, the plaintiff's feelings about his adversary are irrelevant to determining the appropriate sanction for his disregard of the Court's orders, which forms the basis of Judge Bloom's recommendation.

[9] First, the plaintiff's assertion that Judge Bloom "rushed" to decide the defendant's January 21, 2025 motion for a protective order by issuing an order "the very next day," (ECF No. 58 ¶ 5), misrepresents the order, which merely directed the parties to meet and confer to "see if an agreement can be reached on a protective order so discovery can proceed." (ECF No. 36.) When the parties could not reach an agreement on the protective order, the defendant renewed his motion (ECF No. 39), and the plaintiff filed a response (ECF No. 41). Second, the plaintiff asserts that Judge Bloom again denied him the opportunity to respond to the defendant's March 13, 2025 motion to compel by deciding on the motion the next day. (ECF No. 58 ¶¶ 7–8.) In fact, Judge Bloom directed the plaintiff to "respond to the defendant's motion by March 28, 2025" and warned him that if he did not, she would deem the motion unopposed. (ECF No. 47.) The plaintiff did not respond, and Judge Bloom granted the defendant's motion on April 3, 2025. (ECF No. 50.) Finally, the plaintiff contends that Judge Bloom did not give him the chance to respond to the April 18, 2025 motion to dismiss. (ECF No. 58 ¶¶ 9–10.) He cites the Court's April 18, 2025 order — which was not dispositive — referring the motion for a report and recommendation, and Judge Bloom's May 6, 2025 report and recommendation. (*Id.*) But this Court, not Judge Bloom, referred the defendant's motion to Judge Bloom for a report and recommendation. Further, the plaintiff does not explain why he did not respond or explain his months-long inaction in the case in the two weeks before Judge Bloom issued her report and recommendation.

[10] The plaintiff also argues that, under Rule 2(A) of Judge Bloom's local rules, he was exempt from electronic filing, and that the defendant was obligated to mail him a copy of any filings, but that he would often receive mailings "days late." (ECF No. 58 ¶ 11.) The record reflects that the Court timely mailed copies of all orders to the plaintiff, and that the defendant served the plaintiff by email (*e.g.*, ECF Nos. 48, 51, 54), to which the plaintiff previously consented (ECF No. 59-1 (Ex. A)).

expressly adopts Judge Bloom's factual findings, it recognizes the deference afforded to the *pro se* plaintiff, and modifies the report and recommendation as explained below.

In the Second Circuit, courts employ a five-factor test to determine whether dismissal for failure to prosecute is appropriate: (1) "whether the plaintiff's failure to prosecute caused a delay of significant duration;" (2) whether the "plaintiff was given notice that further delay would result in dismissal;" (3) whether the "defendant was likely to be prejudiced by further delay;" (4) whether "the need to alleviate court calendar congestion" outweighs the plaintiff's right to have his day in court; and (5) whether lesser sanctions would be appropriate. *United States ex rel. Drake v. Norden Sys., Inc.*, 375 F.3d 248, 254 (2d Cir. 2004). "In making use of this test, [n]o one factor is dispositive, and ultimately [the Court] must review the dismissal in light of the record as a whole." *Weir v. C&B Delivery LLC*, No. 23-CV-9097, 2024 WL 3823432, at *3 (E.D.N.Y. Aug. 13, 2024) (alterations in original) (quoting *Lewis v. Rawson*, 564 F.3d 569, 576 (2d Cir. 2009)).

The first factor "breaks down into two parts: (1) whether the failures to prosecute were those of the plaintiff, and (2) whether these failures were of significant duration." *See Drake*, 375 F.3d at 255. With respect to the second part, while "[t]here is no fixed period of time that must elapse" before a delay becomes significant, there are many cases in which "[d]elays of several months have been found to warrant dismissal." *Caussade v. United States*, 293 F.R.D. 625, 629–30 (S.D.N.Y. 2013) (collecting cases). The grounds for dismissal are stronger "for even shorter delays when a party has become completely inaccessible, as inaccessibility 'strongly suggests that [the plaintiff] is not diligently pursuing [his] claim.'" *Id.* at 630 (alterations in original) (quoting *Dong v. United States*, No. 02-CV-7751, 2004 WL 385117, at

7

*3 (S.D.N.Y. Mar. 2, 2004)). The second factor simply requires that the plaintiff receive notice that his actions could result in dismissal. *Drake*, 375 F.3d at 254.

Until he sought an extension of time to file objections to the report and recommendation, the plaintiff had not communicated with the Court for four months, since January 31, 2025. (*See* ECF No. 41.) The record makes plain that this inactivity was entirely the plaintiff's fault; in addition to ignoring the Court's orders, the defendant's communications with the court reveal that he last heard from the plaintiff on March 21, 2025. (ECF No. 49 at 1.) During that time, instead of responding to the defendant's motion to dismiss, the plaintiff prioritized filing a motion to intervene with an accompanying 56-page complaint in a wholly unrelated case. *See Garanin v. New York*, No. 25-CV-1959, ECF No. 21 (E.D.N.Y May 29, 2025). Moreover, Judge Bloom twice warned the plaintiff that his refusal to comply with court orders would cause her to recommend dismissal. (ECF No. 53 at 5.)

The third factor, prejudice to the defendant, is presumed where there is unreasonable delay. *Feurtado v. City of New York*, 225 F.R.D. 474, 480 (S.D.N.Y. 2004) ("Prejudice to defendants resulting from unreasonable delay may be presumed, but in cases where delay is more moderate or excusable, the need to show actual prejudice is proportionally greater." (quoting *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 43 (2d Cir. 1982))); *see also Caussade*, 293 F.R.D. at 630–31 ("Where a plaintiff has become inaccessible for months at a time, courts presume prejudice."). Although this is a close call, the Court, giving the plaintiff the benefit of every conceivable doubt, concludes that the four-month delay that the plaintiff's behavior has caused, while inexcusable, is not so extreme as to cause undue prejudice. The fourth factor requires the Court to consider the "balance between district court calendar congestion and the plaintiff's right to an opportunity to be heard." *Drake*, 375 F.3d at 257.

8

Courts have found that a plaintiff who "repeatedly disobeyed court orders vastly diminishes his right to have his claim heard by this Court." *Feurtado*, 225 F.R.D. at 480. Like the third factor, this is a close call; in an abundance of caution, and out of deference to the plaintiff's right to be heard, the Court weighs this factor in the plaintiff's favor.

Finally, the Court considers "whether lesser sanctions would have been sufficient to remedy any prejudice resulting from plaintiff's delay." *Drake*, 375 F.3d at 257. This factor is neutral, as it is conceivable but not obvious that a lesser sanction would have been sufficient.

In sum, while Judge Bloom's legal reasoning was sound, the Court finds that the plaintiff should receive one final opportunity to prosecute his case, though it comes to this conclusion reluctantly. The record makes plain that the Court has been exceedingly generous in granting the plaintiff extensions, and that the plaintiff has not lived up to his obligations. He filed an action in this Court, and he must follow court orders regarding that action. The plaintiff is warned that the Court will not tolerate any further delays or recalcitrance on the plaintiff's part.

The Court advises the plaintiff as follows:

- The plaintiff must produce his Fed. R. Civ. P. 26(a)(1) disclosures and respond to the defendant's request for production of documents and interrogatories by August 1, 2025. The plaintiff must also agree to a date for his deposition by August 1, 2025. The deposition must be completed by August 15, 2025.

- The plaintiff must comply with all future court orders and deadlines. The plaintiff's involvement or interest in other matters do not excuse him from following court directives or meeting court deadlines.

- The Court will not grant future extensions of time absent a truly compelling reason.

Future noncompliance with these obligations will result in sanctions, including dismissal.

In light of Judge Bloom's retirement, a new magistrate judge will be assigned to the case.

9

**SO ORDERED.**

                                                   s/Ann M. Donnelly
                                                   ANN M. DONNELLY
                                                   United States District Judge

Dated: Brooklyn, New York
        July 22, 2025